**THE PROCTER & GAMBLE COMPANY, Plaintiff–Appellant,**

v.

**COLGATE–PALMOLIVE COMPANY, Young & Rubicam Inc., and Dentsu, Young & Rubicam, a partnership, Defendants–Appellees.**

Docket No. 99–7196

United States Court of Appeals, Second Circuit.

Argued: Sept. 29, 1999

Decided: Dec. 07, 1999

E. Edward Bruce, Washington, DC (Ronald G. Dove, Jr., and Andrew Watson, Covington & Burling, Washington, DC; Harold P. Weinberger, Jonathan M. Wagner, Kramer Levin Naftalis & Frankel LLP, New York, N.Y. and Lynda E. Roesch, Dinsmore & Shohl LLP, Cincinnati, OH, of counsel), for Plaintiff–Appellant.

Ethan Horwitz, New York, N.Y. (Amy J. Benjamin and Ross J. Charap, Darby & Darby PC, New York, NY; Richard K. Willard and Brian J. Leske, Steptoe & Johnson LLP, Washington, D.C.; David Nimmer and Elliot N. Brown, Irell & Manella, Los Angeles, CA, of counsel), for Defendant–Appellee Colgate–Palmolive Company.

Lawrence B. Friedman, New York, N.Y. (Jeffrey A. Rosenthal and Andrea L. Spalla, Cleary, Gottlieb, Steen & Hamilton, New York, N.Y. of counsel), for Defendants–Appellees Young & Rubicam Inc. and Dentsu, Young & Rubicam.

Before: MESKILL, MINER, and PARKER, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant The Procter & Gamble Company ("P & G") appeals from a judgment of the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *Judge* ) entered February 10, 1999, finding, after a bench trial, that defendants-appellees Colgate–Palmolive Company ("Colgate"), Young & Rubicam Inc., and Dentsu, Young & Rubicam ("Y & R") were not liable for copyright infringement under 17 U.S.C. § 101 *et seq.* and related counts.

P & G claims error in numerous aspects of Judge Patterson's findings of fact and conclusions of law. This opinion assumes familiarity with those findings and conclusions. *See Procter & Gamble Co. v. Colgate–Palmolive Co.,* 1998 WL 788802 (S.D.N.Y. Nov.9, 1998). For the reasons set forth in the discussion that follows, we affirm the judgment.

In 1994, Colgate decided to launch a new, worldwide advertising campaign to promote its Colgate brand toothpaste. It determined to build the advertising campaign on the theme that Colgate toothpaste protects teeth against plaque acids that cause cavities. As development proceeded, Colgate realized that in some countries its commercials would need to incorporate a demonstration to educate consumers about plaque acids, their effect on teeth, and Colgate toothpaste's ability to protect teeth from the acid.

Colgate's worldwide subsidiaries worked to develop commercials that incorporated an effective demonstration. By June 1995, Colgate's Philippines subsidiary had developed a concept for the demonstration that involved two seashells. In this demo, one shell is brushed with Colgate toothpaste. Both shells are dropped by hand into a beaker of weak acid. After a period of time, the two shells are removed. Both shells are then scraped with dental picks to show that the treated shell is hard whereas the untreated shell flakes. Another demonstration developed at that time uses two eggs, and ends with the two eggs being pressed together to show that the untreated shell is soft whereas the treated shell is hard.

In February 1996, Colgate aired the allegedly infringing commercial in China. The demo portion of the commercial shows a single, egg-shaped, white, cowrie seashell being held by a human hand. The shell contains a black line which divides it into halves lengthwise. One half is marked with a red "C." A toothbrush brushes toothpaste onto the "C" half. No rinsing is shown, but the next scene depicts the shell without the toothpaste on it. The shell is shown being held in wire tongs and

dipped into a glass beaker of clear acid. Next, the shell, no longer in the beaker, appears on a flat surface. A dental mirror taps the untreated half, knocking out a small hole in the shell. The mirror then taps the treated "C" half, which does not crack.

In May 1996, Colgate reshot the demo. As of the time of trial, only commercials with the reshot demo were airing in China. In the reshot demo, the shell is divided in half widthwise, which permits the entire word "Colgate" to be written on the treated half rather than only the single letter "C." A glass bowl is used instead of a beaker. The actual removal of the shell from the acid is shown. And, a smaller hole is created by the tapping.

The development of Colgate's seashell demo, and its evolution from the 1995 demos to the demo that was ultimately incorporated into the China commercial, are discussed at length in Judge Patterson's findings and will not be repeated here. Witnesses from Colgate and Y & R described an extensive development campaign and the numerous decisions made by a variety of individuals over the course of that campaign. The two people responsible for filming the seashell demo, Edward Pollack and David Deahl, provided a detailed account of the filming process and the choices they made to arrive at the finished product.

It is undisputed that individual elements of the Colgate seashell demo derived from public domain science experiments dating to the 1960s. In various combinations, the public domain experiments show that eggs treated with fluoride resist the decaying effects of acid, whereas untreated proxies do not. For example, a 1983 United Kingdom publication describes a "Toothpaste Eggs" experiment for school children. The experiment starts with squeezing toothpaste out of the tube and then dipping half an egg into the toothpaste. The untreated half is marked with a cross and the toothpaste is then removed from the treated side. The egg is placed in a glass container containing acid. Bubbles appear on the untreated half of the egg, whereas the treated half remains free of bubbles. This illustrates that the toothpaste protects the shell from acid attack.

It is similarly undisputed that as early as 1970 Colgate had been developing demos similar to the public domain experiments. For example, in 1970 Colgate's advertising agency developed a demo which, as Judge Patterson found:

> involved using a toothbrush to brush half of an egg with toothpaste, soaking the egg in a beaker of acid, removing the egg, and then tapping both the treated and untreated halves of the egg with a dental instrument or a pencil.

*Procter & Gamble*, 1998 WL 788802 at *7.

On seeing Colgate's China commercial, P & G, which manufactures Crest brand toothpaste, concluded that appellees had created their seashell demo by copying a similar demonstration that used an egg ("egg demo"), which P & G had incorporated in Crest commercials beginning in 1989. P & G sued for copyright infringement of five copyrighted egg demos, namely P & G's original egg demo that P & G published in Chile in 1989 and four substantially similar demos that aired later. P & G did not claim that the commercials as a whole infringed, but only that the demonstration portion did, *i.e.*, that Colgate's 1996 seashell demo infringed P & G's 1989 egg demo.

Specifically, P & G alleged that nine elements from Colgate's seashell demo were copied from P & G's egg demo and infringed P & G's copyrights: (1) the use of an egg-shaped, white proxy for a tooth; (2) the use of a close-up shot showing only the hand holding the shell, with no other body parts shown; (3) a black line dividing the shell into two halves; (4) a mark on one half of the shell; (5) a toothbrush brushing toothpaste onto the marked half; (6) placing the shell with wire tongs into a glass beaker filled with a clear acid solution; (7) removing the shell from the acid;

(8) tapping each half with a metal rod; and, (9) showing the visual effect that the untreated half was weakened whereas the treated half remained strong. Given that public domain experiments predated the commercials, P & G's claim was not that any of those individual elements was protected or had been individually infringed; rather, P & G posited that the compilation of the elements in the demo was protected by copyright, that the compilation had been copied, and that the copying constituted infringement.

■ "Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir.1997), *cert. denied*, — U.S. —, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). Actual copying must be shown, either by direct or indirect evidence. *See id.* Indirect copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying. *See id.* If the plaintiff establishes a prima facie case of infringement, the defendant may rebut it by proving the affirmative defense of independent creation. In analyzing this affirmative defense, the factfinder must be mindful that "subconscious" or "innocent" copying is still copying. *Id.*

In this case, Judge Patterson found against P & G on every element. He found that the egg demo was not validly copyrighted because it was not original and creative. Assuming validity, he found no copying. Assuming evidence of indirect copying, he found that appellees had nevertheless independently created the seashell demo,[1] and, at any rate, that the works were not substantially similar so as to make the copying unlawful. Moreover, he found an entirely independent ground to deny relief. He found that P & G's first publication of the egg demo in Chile in

1989 was a general publication without notice, and that such publication put the egg demo into the public domain. Based on this, Judge Patterson found that the Chilean version of the egg demo, and the remaining four copyrighted egg demos derived from the Chilean version, were not protectable. *Procter & Gamble*, 1998 WL 788802, at *37–55.

■ The only issue we address on appeal is Judge Patterson's finding on independent creation. Because this analysis resolves the appeal, we need not express an opinion as to the remainder of Judge Patterson's analysis. Instead, we assume (without deciding) that P & G's egg demo did not enter the public domain in 1989, and that P & G proved a prima facie case of infringement. With these assumptions in place, we proceed to analyze Judge Patterson's treatment of the affirmative defense of independent creation.

Judge Patterson found: "[T]he evidence of independent creation in this case overwhelms the evidence of access and probative similarity.... Any inference of copying is negated by the significant evidence of independent creation, and the likelihood that similarities between the parties' works are the product of conventions in the field of television commercials." *Procter & Gamble*, 1998 WL 788802, at *52–53. Judge Patterson also noted that, "The specific executional elements in the defendants' egg demonstration that P & G claims were copied do not demonstrate copying because they merely apply conventional methods of portraying the experiment in a television advertising format." *Id.* at *53.

In essence, Judge Patterson credited defense witnesses who stated that there was no conscious copying, and concluded that the similarity between P & G's egg demo and Colgate's seashell demo was attributable to the fact that both derive from

---

1. Judge Patterson collapsed the test for independent creation into the test for indirect copying, in effect finding that there was no indirect copying because similarities were attributable not to copying but to independent creation. *Procter & Gamble*, 1998 WL 788802 at *52–53. P & G does not argue that Judge Patterson's method was error.

public domain experiments and are further governed by basic conventions of the advertising industry. In so doing, Judge Patterson rejected the available inference that P & G's egg demo exerted a subconscious effect on Colgate and Y & R such that they copied without knowing it. Unsurprisingly, P & G does not contend that Judge Patterson's fact-finding was clearly erroneous.

▇ Instead, P & G argues that Judge Patterson erred when he relied on evidence of advertising conventions to conclude that appellees independently created their demo. According to P & G, that reliance is "just another way of removing P & G's work from copyright protection via the *scenes a faire* doctrine." *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 715 (2d Cir.1992) (*scenes a faire* are unprotectable elements that follow naturally from the work's theme rather than from the author's creativity). P & G is incorrect. The fact that elements (or the combination of elements) of a work display the minimum creativity necessary to avoid the *scenes a faire* label for purposes of protectability does not eliminate the fact that those elements may be readily susceptible to independent creation. The less creative the choice, the stronger the inference that the same choice or group of choices made by another was made independently. *See id.* at 708–09 ("[T]he fact that two programs contain the same efficient structure may as likely lead to an inference of independent creation as it does to one of copying.... [E]vidence of similarly efficient structure is not particularly probative of copying."); *cf. Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 674, 682–83 (2d Cir.1998) (creativity in selection and arrangement is a function of the total number of options available; external factors that limit the viability of certain options and render others noncreative; and, prior uses that render certain selections "garden variety"), *cert. denied,* — U.S. —, 119 S.Ct. 2039, 143 L.Ed.2d 1048 (1999).

In this case, the creativity (if any) at issue consisted largely of selecting elements from the public domain to express a specific idea (that fluoride protects teeth against acid attack) in the most efficient way possible. Given the model of the public domain experiments, and the relatively restrictive medium of the television commercial, only so many choices existed. As Judge Patterson recognized, this circumstance strengthened the inference that similarities between the egg and seashell demos were attributable to independent creation rather than copying.

We have considered P & G's remaining arguments on the issue of independent creation and find them to be without merit. Accordingly, we affirm the judgment of the district court.