In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1950

GRUBHUB INC. and TAKEAWAY.COM CENTRAL CORE B.V.,

*Plaintiffs-Appellees*,

*v.*

RELISH LABS LLC and THE KROGER CO.,

*Defendants-Appellants*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-5312 — **Charles R. Norgle**, *Judge*.

———————————

ARGUED NOVEMBER 30, 2022 — DECIDED SEPTEMBER 12, 2023

———————————

Before WOOD, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Grubhub Inc. and Takeaway.com Central Core B.V. (collectively, "Grubhub") brought this suit seeking a declaratory judgment that their logo does not infringe the trademarks of Relish Labs LLC and The Kroger Company (collectively, "Home Chef"). Roughly one month later, Home Chef sought a preliminary injunction to enjoin Grubhub from using the logo. A magistrate judge recommended granting the injunction, but, upon review of Grubhub's objections, the

district court rejected that recommendation and denied the injunction. Because we cannot say on this record that the district court clearly erred in concluding that Home Chef failed to show that consumers are likely to confuse its marks with Grubhub's logo when purchasing Home Chef's products, we affirm.

## I.    BACKGROUND

### A.  Home Chef

Since its inception in the basement of a Chicago apartment in 2013, Home Chef has curated meals and food products for its customers. According to its owner, Home Chef's business has been "creating and delivering meal kits for customers, including fresh, pre-portioned ingredients and easy-to-follow recipes, to help customers prepare and enjoy meals anyone can cook." In 2018, Home Chef merged with The Kroger Co. ("Kroger"). Kroger operates over 2,700 supermarkets under at least two dozen store names throughout the United States. The merger with Kroger allowed Home Chef to expand the availability of its meal kits and products nationwide. It delivers them directly to customers and offers them for sale in Kroger stores, through Kroger's website and mobile app, as well as through food delivery services such as DoorDash and Instacart. Today, Home Chef offers more than 500 products across a variety of categories including meal kits, heat-and-eat meals, ready-to-eat products, and seasonal meals.

In 2014, Home Chef began using its "HC Home Mark," which is protected by five federal trademark registrations: three for the HC Home Mark, alone, and two for the HC Home Mark accompanied with the "HOME CHEF" trade

name (the "Home Chef Home Logo"). None of Home Chef's marks are limited as to color.

          

     HC Home Mark         Home Chef Home Logo

Home Chef has spent more than $450 million on marketing and advertising using its marks to promote its products as convenient, low-cost alternatives to restaurant takeout. In October 2021, Home Chef reached $1 billion in annual sales.

## B. Grubhub

Grubhub is a leading online food-ordering and delivery marketplace. Founded in 2004, Grubhub has connected more than 32 million diners with food from over 300,000 restaurants across the United States. In 2020 alone, Grubhub provided nearly $9 billion in gross food sales to these restaurants, processing more than 745,000 daily orders through its website and mobile app. Its services include, for example, on-demand order management and dispatching, procurement and development of restaurant-dedicated products, and onboarding delivery couriers. Grubhub owns numerous trademark registrations covering the GRUBHUB name and stylized variations.

On June 15, 2021, Grubhub was acquired by Netherlands-based Just Eat Takeaway.com ("JET"). JET owns many food-delivery brands worldwide and combines its "JET House

Mark" with local brand names when conducting business in various countries. JET has used the JET House Mark in connection with its business since 2014.



JET House Mark

In July 2020, roughly one year prior to finalizing its acquisition of Grubhub, JET filed an international trademark application for the JET House Mark, designating the United States as a country where it sought protection. In early 2021, the USPTO trademark examiner preliminarily rejected JET's application in a non-final office action, finding, among other things, that the JET House Mark is "highly similar" and "confusingly similar" to the HC Home Mark and Home Chef Home Logo. JET did not respond to the merits of the non-final office action, and in August 2021, affirmatively withdrew its U.S. trademark application. The application was deemed abandoned.

As part of its acquisition of Grubhub, JET adopted the "Grubhub House Logo," which combines the well-known GRUBHUB word mark with the JET House Mark. Grubhub also began using the "Seamless House Logo," which combines the JET House Mark with the SEAMLESS and GRUBHUB word marks.[1]

---

[1] Seamless is a subsidiary of Grubhub. According to Grubhub, the Seamless brand is being phased out, but as of today, it still exists.

 

Grubhub House Logo          Seamless House Logo

Like Home Chef, Grubhub has made significant investments in its branding. Grubhub first introduced the Grubhub House Logo at Chicago's Lollapalooza music festival in July 2021, with a broader rollout one month later. Grubhub has invested millions of dollars in rebranding its print and electronic materials across its entire business platform, and tens of thousands of its restaurant partners use the Grubhub House Logo. In the time between the July 2021 launch of the logo and Home Chef's motion for preliminary injunction, Grubhub processed over 72 million orders under its new logo.

## C. District Court Proceedings

After receiving a cease-and-desist letter from Home Chef demanding that Grubhub stop using any form of the JET House Mark, Grubhub brought suit for a declaratory judgment that the Grubhub House Logo did not infringe any of Home Chef's marks. Roughly one month later, in early November 2021, Home Chef responded with a motion for a preliminary injunction. The case was referred to a magistrate judge who held a telephonic hearing on Home Chef's motion. Although no live testimony was taken, the judge questioned the parties and heard arguments for nearly three hours. The magistrate judge subsequently issued his Report and Recommendation (the "R&R"), recommending that the district court grant Home Chef preliminary injunctive relief.

Grubhub timely filed its objections to the R&R. After reviewing the contested portions of the R&R *de novo*, *see* 28 U.S.C. § 636(b)(1), the district court sustained each of Grubhub's objections, rejected the magistrate judge's recommendation, and denied Home Chef's preliminary injunction motion. Home Chef appeals.

## II.    LEGAL STANDARD

A preliminary injunction may be granted where a movant shows that it is likely to succeed on the merits of its claims and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without injunctive relief. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). A likelihood of success on the merits must exceed "a mere possibility of success." *Id.* at 540 (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020)). As we made clear in *Pritzker*, "an applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case." 973 F.3d at 763. Thus, while a movant need not prove its claims at this stage by a preponderance of the evidence, it must demonstrate at a minimum how it proposes to prove the key elements of its case. *Id.* In the context of trademark law, once the movant establishes a likelihood of success on the merits, it is statutorily entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a).

Upon a showing of these threshold issues, the court weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant. This is done using a sliding scale—the greater the movant's likelihood of success on the merits, the less the harms need be

in its favor. *Life Spine*, 8 F.4th at 539. The court also considers the public interest. *Id.*

On appeal, we review a district court's decision to grant or deny a preliminary injunction for abuse of discretion. *Id.* Its legal conclusions are reviewed *de novo*, and its factual findings for clear error. *Id.* Absent any such errors, the district court's decision is afforded "great deference." *Id.* (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020)).

## III.    DISCUSSION

### A. Trademark Infringement Generally

The purpose of trademark law is twofold. Most fundamentally, it protects consumers, ensuring they can be confident in making purchasing decisions based on marks they know and trust. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 782 n.15 (1992) (Stevens, J., concurring). But trademark law also protects trademark owners who have spent the time, energy, and resources in presenting a product or service, ensuring that those investments are protected from misappropriation by "pirates and cheats." *Id.*; *see Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987).

The ultimate question underlying trademark infringement is whether consumers are likely to be confused about the *origin* of products or services based on the promotion of those products or services using a particular mark. *See Hesmer Foods, Inc. v. Campbell Soup Co.*, 346 F.2d 356, 359 (7th Cir. 1965); *see also New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979). Accordingly, to succeed on a trademark infringement claim, the claimant must show that it owns a valid, protectable trademark and that there is a likelihood of confusion caused by the alleged infringer's use of the disputed mark.

*SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019); *see* 15 U.S.C. § 1114(1).

We recognize two theories of confusion: forward confusion and reverse confusion. Forward confusion—long recognized in trademark law—occurs when consumers mistakenly believe that a junior (or newer) user's products or services are from the same source or somehow connected to a senior (or prior) user's products or services. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) ("*Quaker Oats*"). A classic example of forward confusion lies where a consumer mistakenly believes that a counterfeit purse she buys is from her favorite Parisian fashion house because the fabric or buckle of the purse features the well-known mark of that fashion house. In such a scenario, the senior user (the Parisian fashion house) is injured because the junior user (the counterfeiter) capitalizes on the good will and established reputation of the fashion house to palm off a cheap and inauthentic product.

Reverse confusion is a newer theory that we first recognized in *Quaker Oats*. 978 F.2d at 957–58; *contra Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 634–35 (7th Cir. 1968) (holding reverse confusion not actionable under Indiana law). Under this theory, confusion occurs when "a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user," thereby overwhelming the senior user. *Quaker Oats*, 978 F.2d at 957. As a result, consumers mistakenly believe that the products or services of the senior user are actually those of the junior user. *Id.* Going back to our earlier hypothetical, consider the following: a local fashion boutique sells purses and other accessories, featuring the initials of the store owner, Lewis Vaughn.

The boutique sells the bags for many years, and the local clientele understands the mark to be associated with the boutique. But then, a dominant, well-known Parisian fashion house adopts a confusingly similar logo using the same initials and begins advertising and selling bags under this mark, inundating the local market. Even though the Parisian fashion house is not intentionally capitalizing on the good will and established reputation of the local boutique, the boutique is nevertheless harmed because its customers now mistakenly believe it has somehow become connected to or affiliated with the fashion house. As a result, the boutique (the senior user) "loses the value of its trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Id.* (quoting *Ameritech, Inc.*, 811 F.2d at 964).

Home Chef argues that there is a likelihood of confusion between its marks and Grubhub's logo under both theories. The magistrate judge recommended granting the injunction based on reverse confusion, acknowledging that the results were mixed with respect to Home Chef's forward confusion theory. But the district court determined that there was an insufficient showing of a likelihood of confusion under both theories and denied the injunction.

Whether consumers are likely to be confused about the origin of an alleged infringer's products or services is a question of fact. *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1216 (7th Cir. 1997). Accordingly, our review is deferential, evaluating the district court's conclusions for clear error. *Id.*; *see Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001). A finding of fact is clearly erroneous only if, based on the evidence as a whole, we are "left with the

definite and firm conviction that a mistake has been commit-
ted." *Rust*, 131 F.3d at 1216 (quotation marks and citation
omitted). If the district court's "account of the evidence is
plausible in light of the record viewed in its entirety, the court
of appeals may not reverse it even though convinced that had
it been sitting as the trier of fact, it would have weighed the
evidence differently." *Id.* (quotation marks and citation omit-
ted).

With this framework in mind, we move to the merits.

## B. Accused Mark

There is no dispute that Home Chef owns valid, protecta-
ble trademarks in the HC Home Mark and Home Chef Home
Logo—the first element of a claim for trademark infringe-
ment. Accordingly, the likelihood of success of Home Chef's
infringement claims depends entirely on whether there is a
likelihood of confusion between its marks and the accused
mark.

But before we can reach the likelihood of confusion analy-
sis, we must resolve a fundamental dispute between the par-
ties: which of Grubhub's marks is *the* accused mark. Home
Chef purports to accuse the JET House Mark. But Grubhub
submits that, because its use of the JET House Mark is always
in combination with the GRUBHUB brand name, the accused
mark is the Grubhub House Logo.

The district court agreed with Grubhub, and it did not
commit clear error in doing so. Although Home Chef focuses
its analysis on the JET House Mark, Grubhub has not used
this mark absent the GRUBHUB brand name within the

United States.[2] Home Chef's arguments to the contrary are unconvincing. For example, Home Chef points to tailored screenshots of Grubhub's website and mobile app where the JET House Mark appears to be used alone. But Home Chef fails to acknowledge that, even if the mark does not appear with the GRUBHUB brand name in these instances, GRUBHUB is nevertheless prominently displayed elsewhere on the website and mobile app's landing page. Trademark law does not protect "those buyers who do not buy on the basis of marks and who choose to buy the goods or services at issue on the basis of some other criteria." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:94 (5th ed. 2023) ("McCarthy").[3] Accordingly, in the instances Home Chef cites, where a consumer has sought out Grubhub's services by visiting www.grubhub.com or by tapping the mobile app icon marked as "GRUBHUB," it is difficult to see how, in this context, she could be confused into thinking that she was purchasing Home Chef-affiliated products solely

---

[2] We acknowledge a single instance in the record where Grubhub used the JET House Mark without connection to the GRUBHUB brand name: a November 1, 2021, screenshot of the Seamless mobile app icon, which combined the JET House Mark with only the SEAMLESS brand name (*i.e.*, it did not include the "Powered by GRUBHUB" tag as used in the Seamless House Logo). But there is insufficient evidence in the record to support a likelihood of confusion finding for this use. And Home Chef does not meaningfully engage with this use other than bringing it to the Court's attention. Accordingly, as the party charging infringement, Home Chef did not meet its burden as to this mark. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117–18 (2004).

[3] Because McCarthy uses consecutive section numbering across volumes, subsequent citations to McCarthy herein are designated by section number only.

based on the appearance of the JET House Mark on the platform. That consumer is not choosing Grubhub's services based on its mark, rather her decision to use Grubhub was already made before visiting the website or app. Thus, we are not convinced that this evidence supports a finding that the accused mark is the JET House Mark and agree with the district court's determination that the accused mark at issue is the Grubhub House Logo.[4] And so, we are left with:





The Accused Mark          Home Chef's Protected Marks

## C. Likelihood of Confusion

Proceeding to the likelihood of confusion analysis, "we ask whether consumers who might use either product [or service] would likely attribute them to a single source." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019). To answer this question, we consider seven factors, none of which is dispositive:

(1) similarity of the marks in appearance and suggestion;
(2) similarity of the products;
(3) the area and manner of concurrent use;

[4] The Seamless House Logo is subject to the same likelihood of confusion analysis because that mark also includes the GRUBHUB brand name.

(4) the degree of care likely to be exercised by consumers;
(5) the strength of the senior user's mark;
(6) existence of actual confusion; and
(7) the intent of the defendant to "palm off" its product as that of another.

*See id.* "Courts may assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Home Chef disputes the district court's determination as to these three "particularly important" factors, each of which the district court found to weigh against a finding of a likelihood of confusion. *See id.*

Although Home Chef has advanced both forward and reverse theories of confusion, we focus our attention on the latter. Not only is reverse confusion the dominant theory the parties present to us, but we agree with the district court that Home Chef did not make a particularly strong showing that its forward confusion theory would prevail. Based on the current record, we do not see how a consumer interacting with the Grubhub House Logo could reasonably believe that she was engaging with Home Chef, particularly where the accused mark prominently features Grubhub's own brand name.[5] *Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004) ("Although the marks are similar, the prominent display of different names on the marks reduces any likelihood of

---

[5] We emphasize that this conclusion is based on the record before us at this preliminary stage. We do not intend to suggest that Home Chef's forward confusion theory is necessarily futile to the extent that it can be supported with sufficient evidence if and when the case proceeds.

confusion."); *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 645 (7th Cir. 2001) ("All of [accused infringer's] products … prominently display the well-known [mark], providing a strong indication that there is no likelihood of confusion."); *Ziebart Int'l Corp. v. After Mkt. Assocs., Inc.*, 802 F.2d 220, 227 (7th Cir. 1986) (collecting cases holding that the "[p]rominent display of different names on the marks … reduce[s] the likelihood of confusion"); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981) (same).

### 1. Similarity of the Marks

Focusing then on Home Chef's claim of reverse confusion, the first factor in the likelihood of confusion analysis looks at the similarity between the marks. When evaluating a mark, we must keep in mind that "[t]he commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545–46 (1920). Accordingly, to determine whether two marks are similar in appearance and suggestion, we "compare the marks in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *AutoZone*, 543 F.3d at 930 (quotation marks and citations omitted); *see Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997) ("it is inappropriate to focus on minor stylistic differences to determine if confusion is likely" when the marks are not usually encountered together). To that end, "the test is not whether the public would confuse the *marks*, but whether the viewer of [a] mark would be likely to associate the product or service with which it is connected with the source of products or services with which [another] mark is connected." *James*

*Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976) (emphasis added).

The district court gave little weight to the USPTO's determination and found that the marks were not sufficiently similar, concluding that this factor did not support a likelihood of confusion finding. Home Chef argues that the district court only reached this conclusion after "painstakingly dissect[ing] the marks" in a side-by-side comparison, which is contrary to the applicable law. This argument, however, suffers from several flaws.

First, Home Chef is correct that a court must do more than merely compare the competing marks side-by-side; rather, it must consider how a potential consumer would view them in the marketplace. *See Ty*, 237 F.3d at 898. But the district court did this. In addition to comparing the various attributes of the two marks, the court also examined how consumers would consider them as a whole, finding that because the Grubhub House Logo combined the house design with the strong GRUBHUB word mark, the word mark became the more salient portion of the logo, thereby differentiating the accused mark from Home Chef's marks. *See Ty, Inc.*, 237 F.3d at 898 ("[I]f one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements.") (citation omitted). In other words, it found Grubhub's use of its brand name in the Grubhub House Logo more likely to mitigate reverse confusion than to aggravate it, particularly where both parties have well-established, highly recognizable brands.

Nevertheless, Home Chef contends that the district court, when assessing its reverse confusion theory, placed too much weight on the presence of the GRUBHUB word mark in the

Grubhub House Logo. Generally, the analysis of the similarity factor is no different under reverse or forward confusion; under either theory a court may assess the similarity of the sound, sight, or meaning of the marks. *See Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983); *see generally* McCarthy § 23:10. But, as the Third Circuit has recognized, "in the reverse confusion context, the presence of [brand names] must obviously be treated differently than in the [forward] confusion context." *A & H Sportswear*, 237 F.3d at 229–30. This makes sense. Home Chef's reverse confusion theory is that, when consumers come across products or services bearing its HC Home Mark (which, as you may recall, does not include the Home Chef brand name), they will mistakenly believe that the products or services belong to Grubhub due to the strength of the GRUBHUB word mark. Thus, while the presence of the Grubhub name might alleviate forward confusion (that is, believing a Grubhub product is one made by Home Chef), it plays a lesser role in reverse confusion when the consumer would not see Grubhub's name when encountering a Home Chef product.

This is not the first time that we have encountered an argument by a trademark claimant that the appearance of an accused infringer's well-known brand name does not allay the confusion caused by otherwise similar marks. But, in those cases, the junior user's accused marks and products were "virtually identical" to those of the senior user. *Quaker Oats*, 978 F.2d at 959. For example, in *Quaker Oats*, the large, junior user began selling an isotonic beverage with the tagline "Gatorade is Thirst Aid." *Id.* at 949–51. The senior user—a small, Vermont-based company—had three federal trademark registrations for "THIRST-AID," which it had also used to market an isotonic beverage. *Id.* Under those

circumstances, we concluded that it was "precisely the strong association between Gatorade and 'Thirst Aid' created by Quaker's [Gatorade] ads that [was] likely to create confusion." *Id.* at 960.

Similarly, in *International Kennel Club of Chicago v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988), we held that the accused infringer's use of its brand name, "24K Polar Puff," along with the phrase "International Kennel Club" was a "smoke screen" because the phrase was indistinguishable from the senior user's name, "International Kennel Club of Chicago." *Id.* at 1088. And, in *A.J. Canfield Co. v. Vess Beverages, Inc.*, we affirmed the district court's entry of a preliminary injunction against an accused infringer that used its brand name "VESS" in conjunction with "Chocolate Fudge" to sell carbonated diet chocolate sodas. 612 F. Supp. 1081, 1091 (N.D. Ill. 1985), *aff'd*, 796 F.2d 903 (7th Cir. 1986). There, the senior user had trademark protection for the use of "Chocolate Fudge," which it too used to market chocolate-flavored soft drinks. *Id.* at 1083. The district court determined that the infringer's use of its brand name was not a defense because "the use of another's trademark constitutes infringement with or without the use of the infringer's housemark." *Id.* at 1091.

On the other end of the spectrum sits *Ziebart*, where we determined that there was no likelihood of confusion between the marks of two competitors who both sold vehicular rust-proofing compounds under marks each featuring a depiction of a knight's helmet. 802 F.2d at 224. In reaching this conclusion, we observed that the marks used different colors, but focused principally on the "[p]rominent display" of each party's brand name on its respective mark. *Id.*, 802 F.2d at 226–27.

This case falls somewhere in the middle. On the one hand, unlike *Quaker Oats*, *Mighty Star*, and *A.J. Canfield*, this case involves more than mere word marks, and the house design in the Grubhub House Logo is neither "virtually identical" to the Home Chef house design nor used to promote "virtually identical" products and services. That is, Grubhub did not take the exact HC Home Mark and simply add "GRUBHUB" underneath it, and it does not use its mark to sell meal kits, heat-and-eat meals, ready-to-eat products, and seasonal meals, like Home Chef. But this case is not directly analogous to *Ziebart* either, because the two marks—though not identical—are conceptually similar, and Home Chef does not always use the Home Chef brand name with its mark. The magistrate judge found this case to be closer to *Quaker Oats*, while the district court found it to be closer to *Ziebart*. Short of attorney argument, evidence in the record that Grubhub has or will so overwhelm the market such that consumers will begin associating the HC Home Mark with Grubhub is sparse, at best. Because the available facts are in rough equipoise, we cannot say that the district court clearly erred in determining that Home Chef failed to show that the similarity of the marks favored a finding of a likelihood of confusion.

Second, Home Chef also faults the district court for not giving substantial weight to the USPTO's determination. But the district court did not clearly err in according it little weight. The non-final office action was only a preliminary determination as to the registrability of the JET House Mark. It says little about the similarity of the Grubhub House Logo and Home Chef's marks. Moreover, there was no conclusive determination as to the registrability of the mark. JET chose to abandon its application shortly after the USPTO issued its office action. Home Chef points to no case law, and we are

aware of none, that imposes an adverse inference or presumption of similarity where a party voluntarily abandons its trademark application following an unfavorable preliminary USPTO determination. And, as several of our sister circuits have noted, USPTO determinations are often of limited value in the infringement analysis when they lack the benefit of the fuller record developed before the district court, such as evidence about the way marks are actually used in the marketplace. *See Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427 (6th Cir. 2017); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220–21 (3d Cir. 2000); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). This is not to say that USPTO preliminary determinations are never useful, but the district court's decision to accord it little weight in this case was not clearly erroneous.

## 2. Strength of Grubhub's Mark

The parties do not separately brief the strength of Grubhub's mark on appeal because Grubhub did not object to the magistrate judge's conclusion that the strength-of-the-mark factor supported a likelihood of reverse confusion. As a general rule, in such a case, we typically would not review that conclusion on appeal. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If a party objects [to an R&R] in the district court on some issues and not others, he waives appellate review of the issues to which he has not objected."). But because Home Chef has discussed the strength of the GRUBHUB word mark at all levels of review—albeit not expressly in connection with this particular factor—we conclude that addressing the issue "cause[s] no one … any harm of which the law ought to take note." *Allen v. City of Chicago*, 865 F.3d 936, 944 (7th Cir. 2017) (citation omitted). This is

especially true given that the strength-of-the-mark factor is so intricately connected to the similarity-of-marks factor, as noted above.

This factor requires consideration of both the commercial and conceptual strength of the mark. *See* McCarthy § 11:80.[6] In *Quaker Oats*, we stated that, in a reverse confusion case, "it may make more sense to consider the strength of the mark in terms of its association with the junior user's goods." 978 F.2d at 959. Put another way, we do not consider the strength of the junior user's mark in isolation, but in its ability to *overpower* the senior user's mark. *See* McCarthy § 23:10. Indeed, implicit in Home Chef's arguments is that the Grubhub House Logo—which uses the GRUBHUB word mark—is *stronger* than its marks; that Grubhub's saturation of (or ability to saturate) the market with its logo is likely to lead consumers to believe the HC Home Mark connotes a Grubhub service.

Because a consumer who first encounters a particular mark used in connection with a set of goods is likely to continue associating that mark with those goods, *see A & H Sportswear*, 237 F.3d at 230, the relative prevalence of those marks in the marketplace typically will determine whether the confusion a consumer experiences is forward or reverse. *Id.* As the Third Circuit aptly explained:

---

[6] Because the parties focused on the economic and marketing strength of the marks—*i.e.*, the commercial strength—when briefing this factor in the district court, so will we. *See AutoZone*, 543 F.3d at 933 (7th Cir. 2008) ("The strength of a mark usually corresponds to its economic and marketing strength.") (citation omitted).

> [I]f one manufacturer—junior or senior—ex-
> pends tremendous sums in advertising while
> the other does not, consumers will be more
> likely to encounter the heavily advertised mark
> first. Where the greater advertising originates
> from the senior user, we are more likely to see a
> case of direct confusion; if the greater advertis-
> ing originates from the junior user, reverse con-
> fusion is more likely.

*Id.* In a prototypical reverse confusion case, a senior user with a commercially weaker mark is pitted against a junior user with a far stronger mark. Accordingly, instead of considering the commercial strength of the junior's mark in isolation, we look to its *relative* strength as compared to that of the senior, "because it is the strength of the larger, junior user's mark which results in reverse confusion." *Id.* at 231 (quoting *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 444 (3d Cir. 2000)).

This is not such a prototypical case. Home Chef has spent over $450 million on advertising and has sold billions of dollars of products under its marks, which it has used to market products to millions of customers nationwide since 2014. It has received significant press coverage and accolades for its top customer service, and in 2021, Home Chef reached $1 billion in annual sales. It is hard to see how the HC Home Mark (let alone the HC Home Logo which prominently features the HOME CHEF brand name) is at risk of being so overwhelmed by Grubhub's use of the Grubhub House Logo that consumers are likely to begin associating Home Chef's products with Grubhub. Home Chef's own arguments as to the notable

strength of its marks to support its forward confusion theory only underscore this point.

To be sure, Grubhub is not a weak junior user. Grubhub too has invested millions of dollars in its Grubhub House Logo and reached $1.8 billion in sales revenue in 2020. As such, Grubhub is in a position where it *could* overwhelm a senior user's mark. But it is not our role to weigh the evidence anew. Based on this record, we are not convinced that the district court clearly erred when finding that Home Chef failed to present sufficient evidence that consumers do or will believe that products sold using a mark in which Home Chef has invested hundreds of millions of advertising dollars are associated with Grubhub. *See, e.g.*, *Procter & Gamble Co. v. Colgate-Palmolive Co.*, No. 96 Civ. 9123 (RPP), 1998 WL 788802, at \*65 (S.D.N.Y. Nov. 9, 1998), *aff'd*, 199 F.3d 74 (2d Cir. 1999) ("Given the size, financial strength and presence of P & G in the region, the relative spending levels for CREST and COLGATE advertising in China, the high consumer awareness of the CREST brand and of P & G generally, and the minimal evidence of direct confusion between CREST and COLGATE, reverse confusion also is not found.").[7]

---

[7] Home Chef argues that this conclusion will encourage large junior users to expropriate small senior users' lesser known trademarks. While this is a reasonable point, evaluation of such an argument is more appropriately addressed when considering the intent factor in the likelihood of confusion analysis. And, as we will see below, there is little evidence that Grubhub sought to divert any business from Home Chef or otherwise overwhelm Home Chef's position in the marketplace through its adoption of the Grubhub House Logo.

### 3. Actual Confusion

Evidence of actual confusion, which can be presented as either direct or survey evidence, is not essential to a finding of a likelihood of confusion, but where present it "is entitled to substantial weight." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). That said, depending on the factual circumstances, isolated incidents of actual confusion may be disregarded as *de minimis*. *Packman*, 267 F.3d at 645 (7th Cir. 2001) (collecting cases). As the factfinder at the preliminary injunction stage, it is within the district court's purview to weigh the evidence submitted by the parties on this issue. We may not reverse so long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Rust*, 131 F.3d at 1216.

Home Chef relies on two instances of actual confusion. First, it points to an anonymous tweet featuring a side-by-side screenshot of the parties' mobile app icons that reads: "So uh why did grubhub make their app icon look like a stylized orange version of home chef..? Even the utensils are almost exactly the same.." We agree with the district court that this evidence carries little, if any, weight. As an initial matter, Home Chef does not allege that the author was a Home Chef or Grubhub customer. *See Packman*, 267 F.3d at 645 (instances of confusion that are not attributable to the applicable consumer group are entitled to less weight); *CAE, Inc.*, 267 F.3d at 686 (same). But more fundamentally, as the district court observed, the author of the tweet was not actually confused by the marks. Recognizing that the corporations were distinct, the author merely noted the bare similarities between the two marks. This does little to demonstrate actual confusion.

Home Chef also cites to a Facebook message it received from one of its customers. The customer asked: "Did you and Grub Hub merge or come to some sort of mutual deal, because I had to take a double take today when my Grub Hub app updated," sharing a screenshot of the Grubhub and Home Chef mobile apps:



This message certainly warrants more scrutiny than the previous tweet. But the district court's decision not to give it significant weight was not unreasonable.

First, as the district court noted, the Facebook message represented just one of millions of customers who would have been exposed to Grubhub's new logo following its expansive rebranding in 2021. Second, a customer inquiry is markedly different from evidence that a customer had ordered a meal from Home Chef thinking it was Grubhub and, on its own, falls short of proving actual confusion. *See* McCarthy § 23:16 ("[W]hile enquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion."); *see also* Restatement (Third) of Unfair Competition § 23 (1995) ("Evidence of inquiries by customers as to whether the plaintiff and the defendant are associated … may not establish the existence of actual confusion if the nature of the inquiries indicates that consumers perceive a difference between the designations and are skeptical of the existence of a connection between the users.").

On the other side of the ledger, the district court had Grub-hub's two consumer surveys. Employing the *Eveready* format,[8] one survey evaluated the risk of forward confusion, and the other of reverse confusion. Relevant for our purposes, the reverse confusion survey exposed 300 actual or prospective consumers of home-delivered meal kits or ready-to-eat meals to Home Chef's marks as they appeared on its mobile app or its website for a minimum of ten and thirty seconds, respectively. Respondents viewing either platform were exposed to both the Home Chef Home Logo and the HC Home Mark, although the latter was in close proximity to the "Home Chef" word mark, as shown in the example images below.

---

[8] Named after the survey used in *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976), the survey format tests the association consumers have with the trademarks in question without showing them the trademarks side-by-side. "In cases involving strong marks, the Eveready test should be considered the gold standard for fundamental cognitive and marketing reasons." McCarthy § 32:174 (quoting J.B. Swann, *Likelihood of Confusion Studies and the Straightened Scope of* Squirt, 98 Trademark Rep. 739, 746 (2008)).



Home Chef Mobile App



Home Chef Website

None of the images used in the survey exhibited the Home Chef Home Logo or the HC Home Mark in isolation without

the context of the other content on the platform. *See* McCarthy § 32:163 ("The closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results.").

Following exposure to the images, the respondents were asked an open-ended question: "What company do you think offers the app/service we just showed you, if you have an opinion?" Of the 300 respondents, 204 (or 68%) responded, "Home Chef." Zero respondents answered with "Grubhub."[9] Respondents then were asked the open-ended question: "Do you think the app/service we showed you is affiliated with, or sponsored or approved by, any other company?" Of the 300 respondents, 53 (or 18%) answered in the affirmative, but zero identified Grubhub as the affiliated company.[10] Based on these data, Grubhub's expert concluded that "[t]he fact that no respondents out of 300 identified Grubhub in response to any question powerfully demonstrates that Grubhub's use of the allegedly infringing logo does not create a likelihood of reverse confusion." The district court agreed, finding that Home Chef had failed to meet its burden to show actual confusion.

Home Chef argues that this finding was clearly erroneous for three reasons. First, according to Home Chef, the district court mistook the time period during which the two marks

---

[9] The remaining 96 respondents answered with variations of the term "Home Chef" (*e.g.*, "Green Chef," "Home Fresh," other "Chef," etc.), with other meal delivery companies (*e.g.*, Hello Fresh, Blue Apron, etc.), or stated that they did not know.

[10] The companies the respondents identified included, for example, Amazon, Blue Apron, "Green Chef," Hello Fresh, Apple, Google, Kroger, Meijer, etc. Of those 53 respondents, 27 stated that they did not know.

coexisted in the marketplace, which tainted the weight the court assigned to its evidence. Second, Home Chef challenges the substance of the survey, characterizing it as a memory test, nothing more. And third, Home Chef believes that the district court improperly applied an adverse inference against Home Chef because it did not produce its own survey evidence.[11] None are sufficient to show clear error.

First, we acknowledge that the district court misunder-stood the amount of time both marks were in the marketplace by the time Home Chef had filed its preliminary injunction motion. The district court believed it was a year, when in ac-tuality it was only a few months. But the period of mutual market presence in an actual confusion analysis generally serves as a proxy for the relative number of consumers who were exposed to the marks; the assumption is that the longer two marks coexist in the market, the more consumers encoun-ter them. Such an inference, however, has limited utility here, where both parties are national, billion-dollar corporations that have each expended millions (if not hundreds of mil-lions) of dollars advertising under their respective marks to the public. Under these circumstances, we cannot conclude that the district court's decision to attribute little weight to Home Chef's isolated examples of actual confusion was clearly erroneous.

---

[11] Home Chef also argues that the surveys (1) did not use the proper universe of consumers; (2) failed to accurately reflect the marketplace con-ditions; and (3) failed to use a control group. Despite raising these pur-ported methodological flaws, Home Chef does not meaningfully engage with them and asks us merely to adopt the findings of the magistrate judge. Given the sparsity of its argument, we decline to do so.

Next, Home Chef complains that the survey amounted to nothing more than a memory test that failed to account for the potential risk of confusion between the HC Home Mark and the Grubhub House Logo. For example, Home Chef points out that it is difficult to see how a respondent, who looks at Home Chef's website or mobile app, could answer the first question (*i.e.*, what company offers the app/service shown in the photos?) with an answer other than "Home Chef." But remember that the relevant audience for the survey is Home Chef's current or prospective customers—not just any person selected at random. *See* McCarthy § 32:174; *see also Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 741 (2d Cir. 1994) ("Where, as here, the relevant issue is whether consumers mistakenly believe that the senior user's products actually originate with the junior user, it is appropriate to survey the senior user's customers."). And Grubhub's reverse confusion survey was properly limited to that audience.

Moreover, contrary to Home Chef's contention, the district court *did* acknowledge the survey's failure to assess whether consumers would be confused based on use of the HC Home Mark alone, noting that the magistrate judge's criticism of the survey on this basis was "not erroneous." *Grubhub*, 2022 WL 2774986, at *3. But the district court was not convinced that this error warranted discounting the survey *in toto*, given that a consumer will rarely encounter the HC Home Mark without also encountering the "Home Chef" brand name in some form, be it on the mobile app, the website, or in a grocery store. *Id.* And, while Home Chef has submitted instances of its use of the HC Home Mark alone, it has not presented any evidence of actual confusion based on those instances. Thus, we cannot conclude the district court

clearly erred in its assessment of the survey results at this nascent stage of the case.

We easily dispatch Home Chef's final argument that the district court drew an adverse inference against it because it did not present its own survey evidence. Of course, Home Chef is correct that it need not perform a survey to prevail on its claim at this, or any other, stage of litigation.[12] *See Sullivan*, 385 F.3d at 779 (noting, on appeal from summary judgment, that the senior user "was not required to conduct his own survey"). But it still must provide enough evidence from which a district court can find that it is likely to succeed on its claim. Here, the district court did not impose an adverse inference against Home Chef, but only weighed what evidence it had presented against the evidence produced by Grubhub. While Grubhub's survey is not without its weaknesses, the district court's weighing of the competing evidence was plausible. In sum, the district court did not clearly err in finding that the actual confusion factor does not support a likelihood of confusion finding.

### 4. Grubhub's Intent

Turning to the final factor, intent. We have stated previously that, in a reverse confusion case, intent is "largely irrelevant" because the alleged infringer is *not* palming off or

---

[12] We note, however, that the cases on which Home Chef relies for this proposition, *e.g.*, *Meridian*, 128 F.3d at 1119; *Int'l Kennel Club*, 846 F.2d at 1086; and *A.J. Canfield*, 796 F.2d at 908, were decided under our since-abrogated preliminary injunction standard wherein a party seeking the injunction need only show a "better than negligible chance" of succeeding on the merits. It is undisputed that, after *Pritzker*, an applicant for preliminary relief bears a "significant burden" and must establish more than a mere possibility of success. 973 F.3d at 762–63.

otherwise attempting to create confusion as to the source of its products or services. *SportFuel, Inc.*, 932 F.3d at 602; *Quaker Oats*, 978 F.2d at 961 (intent is "essentially irrelevant in a reverse confusion case"). While this is correct, we use this opportunity to further explain the role of intent in reverse confusion cases.

At the outset, we note that "[a] finding of fraudulent intent or bad faith is not essential to prove infringement where likelihood of confusion already exists." *Henri's Food Prods.*, 717 F.2d at 359. This is true in both forward and reverse confusion contexts. That said, a junior user's intent may support a finding of likelihood of confusion where there is evidence that it adopted its mark to confuse consumers into thinking its own products were those of the senior user. Therefore, in a typical forward confusion case, we evaluate whether there is any evidence from which a factfinder could reasonably infer that the junior user purposefully adopted its mark to "palm off" its products or services as those of the senior. *See, e.g., AutoZone*, 543 F.3d at 934. Where such evidence exists, this factor favors the senior user because it tends to show that a consumer would be likely to confuse the source of the goods. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997) ("Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user.").[13]

---

[13] By contrast, while a junior user's intent to infringe can support a likelihood of confusion finding, the reverse is not true. A junior user's innocent adoption of a mark does little to further its defense, because innocent infringement is still infringement. *See* Thomas L. Casagrande, *A*

But in a reverse confusion case, by definition, the junior user is not attempting to capitalize on the senior user's good will and reputation; thus, it makes less sense to inquire whether the junior user adopted its mark with the intent to "palm off" its product as that of another. *See Quaker Oats*, 978 F.2d at 961. In this regard, we have remarked that the junior user's intent (to palm off) in a reverse confusion case is "essentially irrelevant." *Id.* That said, where it can be shown that the junior user culpably disregarded the known rights of the senior user when adopting its own mark, such evidence can support an inference of consumer confusion. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1168 (9th Cir. 2021) ("Intent can be shown … by evidence that, for example, the junior knew of the mark, should have known of the mark, intended to copy the senior, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion.") (cleaned up). And of course, where there is evidence that the junior user "deliberate[ly] inten[ded] to push the senior user out of the market," that too would support a finding of a likelihood of confusion. *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 479 (3d Cir. 2005) (citation omitted); *see also Humanly Possible, Inc. v. Manpower, Inc.*, No. 11 C 4977, 2013 WL 633332, at *7 (N.D. Ill. Feb. 19, 2013) (inquiring whether there was evidence that the junior user "acted intentionally to overwhelm [the senior user]'s mark").

---

*Verdict for Your Thoughts? Why an Accused Trademark Infringer's Intent Has No Place in Likelihood of Confusion Analysis*, 101 Trademark Rep. 1447, 1460 n.58 (2011) (collecting cases); *id.* at 1470 ("intent provides a one-way ratchet that helps trademark plaintiffs *only*.").

Here, we see no evidence that Grubhub adopted the Grubhub House Logo with any culpable or deliberate disregard for Home Chef's marks. Grubhub created the Grubhub House Logo—combining its long-recognized GRUBHUB word mark with the JET House Mark—as part of its acquisition by JET. And JET had been using its JET House Mark internationally since approximately June 2014. Admittedly, the USPTO non-final office action put Grubhub on notice of Home Chef's rights in the HC Home Mark and the Home Chef Home Logo. But Grubhub did not disregard those rights. Instead, it agreed to only use the JET House Mark in connection with the GRUBHUB brand name in an attempt to strike a balance between the two parties' commercial interests.

Because this factor can only bolster a likelihood of confusion finding or be neutral, we agree with Home Chef that the district court erred in determining that this factor weighed *against* a likelihood of confusion. However, even so, this factor is at best neutral and, therefore, of minimal value in the likelihood of confusion analysis.

### 5. Weighing the Likelihood of Confusion Factors

Taking stock, we conclude that the district court did not clearly err in determining that neither the similarity-of-the-mark factor nor the actual-confusion factor supports a likelihood of confusion. Furthermore, based on this preliminary record, the strength of Grubhub's mark does not pose a significant threat of overwhelming the undisputed strength of Home Chef's marks. Finally, the intent factor is, at best, neutral and provides little value in the analysis. As for the remaining three factors—the similarity of the products, the area and manner of concurrent use, and the degree of care likely to be exercised by consumers—the parties do not dispute that they

weigh in favor of a finding of a likelihood of confusion. Given this, we turn to the district court's determination that Home Chef failed to make a strong showing of a likelihood of success on the merits.

Home Chef argues that, because all seven factors are "interconnected," the district court clearly erred by focusing only on the factors in dispute without addressing the undisputed factors. To the contrary, the district court *did* address the undisputed factors, concluding that the magistrate judge's determinations as to these factors were not clearly erroneous. *Grubhub*, 2022 WL 2774986, at *6 n.2. This was a correct application of law. *Johnson*, 170 F.3d at 739 ("If no objection or only partial objection [to an R&R] is made, the district court judge reviews those unobjected portions for clear error."). Furthermore, the district court held that, even if there had been any error, the weight assigned to those factors would not have affected its conclusion that Home Chef failed to meet its burden of showing a strong likelihood of success on the merits.

Home Chef's argument boils down to mere disagreement with the district court's weighing of the factors. As Home Chef correctly recognized, there is "no hard and fast requirement" that any particular factor or factors be decisive of a likelihood of confusion analysis. *See Ty, Inc.*, 237 F.3d at 902. Here, the district court, faced with competing evidence, reviewed the record and used its discretion to give weight to the factors it found most salient and significant. *See id.* at 901–02. And given our own analysis of these factors, we cannot say on this record that the district court's determination that Home Chef

did not satisfy its burden to establish a likelihood of success on the merits was clearly erroneous.[14]

## IV.    CONCLUSION

Because the district court did not clearly err in finding that Home Chef failed to meet its burden to show a likelihood of success on the merits of its trademark infringement claim, it did not abuse its discretion in denying Home Chef's motion for a preliminary injunction. We therefore AFFIRM the district court's decision.

---

[14] None of our conclusions should be interpreted to apply to the JET House Mark alone. Because we understand that Grubhub only uses the JET House Mark locked up with or in close proximity to the GRUBHUB brand name, our conclusions are limited to such uses. Any use of the JET House Mark alone is a separate inquiry not presently before us.