Justice GINSBURG delivered the opinion of the Court.
*2301 This case concerns eligibility for federal trademark registration. Respondent Booking.com, an enterprise that maintains a travel-reservation website by the same name, sought to register the mark "Booking.com." Concluding that "Booking.com" is a generic name for online hotel-reservation services, the U. S. Patent and Trademark Office (PTO) refused registration.
A generic name-the name of a class of products or services-is ineligible for federal trademark registration. The word "booking," the parties do not dispute, is generic for hotel-reservation services. "Booking.com" must also be generic, the PTO maintains, under an encompassing rule the PTO currently urges us to adopt: The combination of a generic word and ".com" is generic.
In accord with the first- and second-instance judgments in this case, we reject the PTO's sweeping rule. A term styled "generic.com" is a generic name for a class of goods or services only if the term has that meaning to consumers. Consumers, according to lower court determinations uncontested here by the PTO, do not perceive the term "Booking.com" to signify online hotel-reservation services as a class. In circumstances like those this case presents, a "generic.com" term is not generic and can be eligible for federal trademark registration.
*2302 I
A
A trademark distinguishes one producer's goods or services from another's. Guarding a trademark against use by others, this Court has explained, "secure[s] to the owner of the mark the goodwill" of her business and "protect[s] the ability of consumers to distinguish among competing producers." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc. , 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582, 198 (1985) ; see S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946) (trademark statutes aim to "protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get"). Trademark protection has roots in common law and equity. Matal v. Tam , 582 U. S. ----, ----, 137 S.Ct. 1744, 1751, 198 L.Ed.2d 366 (2017). Today, the Lanham Act, enacted in 1946, provides federal statutory protection for trademarks. 60 Stat. 427, as amended, 15 U.S.C. § 1051 et seq. We have recognized that federal trademark protection, supplementing state law, "supports the free flow of commerce" and "foster[s] competition." Matal , 582 U. S., at ----, ---- - ----, 137 S.Ct., at 1751-1752, 1752-1753 (internal quotation marks omitted).
The Lanham Act not only arms trademark owners with federal claims for relief; importantly, it establishes a system of federal trademark registration. The owner of a mark on the principal register enjoys "valuable benefits," including a presumption that the mark is valid. Iancu v. Brunetti , 588 U. S. ----, ----, 139 S.Ct. 2294, 2297-2298, 204 L.Ed.2d 714 (2019) ; see §§ 1051, 1052. The supplemental register contains other product and service designations, some of which could one day gain eligibility for the principal register. See § 1091. The supplemental register accords more modest benefits; notably, a listing on that register announces one's use of the designation to others considering a similar mark. See 3 J. McCarthy, Trademarks and Unfair Competition § 19:37 (5th ed. 2019) (hereinafter McCarthy). Even without federal registration, a mark may be eligible for protection against infringement under both the Lanham Act and other sources of law. See Matal , 582 U. S., at ---- - ----, 137 S.Ct., at 1752-1753.
Prime among the conditions for registration, the mark must be one "by which the goods of the applicant may be distinguished from the goods of others." § 1052 ; see § 1091(a) (supplemental register contains "marks capable of distinguishing ... goods or services"). Distinctiveness is often expressed on an increasing scale: Word marks "may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Two Pesos, Inc. v. Taco Cabana, Inc. , 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).
The more distinctive the mark, the more readily it qualifies for the principal register. The most distinctive marks-those that are " 'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent)"-may be placed on the principal register because they are "inherently distinctive." Wal-Mart Stores, Inc. v. Samara Brothers, Inc. , 529 U.S. 205, 210-211, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). "Descriptive" terms, in contrast, are not eligible for the principal register based on their inherent qualities alone. E.g. , Park 'N Fly, Inc. v. Dollar Park & Fly, Inc. , 718 F.2d 327, 331 (CA9 1983) ("Park 'N Fly" airport parking is descriptive), rev'd on other grounds, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). The Lanham Act, "liberaliz[ing] the common law," "extended protection to descriptive *2303 marks." Qualitex Co. v. Jacobson Products Co. , 514 U.S. 159, 171, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). But to be placed on the principal register, descriptive terms must achieve significance "in the minds of the public" as identifying the applicant's goods or services-a quality called "acquired distinctiveness" or "secondary meaning." Wal-Mart Stores , 529 U.S. at 211, 120 S.Ct. 1339 (internal quotation marks omitted); see § 1052(e), (f). Without secondary meaning, descriptive terms may be eligible only for the supplemental register. § 1091(a).
At the lowest end of the distinctiveness scale is "the generic name for the goods or services." §§ 1127, 1064(3), 1065(4). The name of the good itself (e.g. , "wine") is incapable of "distinguish[ing] [one producer's goods] from the goods of others" and is therefore ineligible for registration. § 1052 ; see § 1091(a). Indeed, generic terms are ordinarily ineligible for protection as trademarks at all. See Restatement (Third) of Unfair Competition § 15, p. 142 (1993); Otokoyama Co. v. Wine of Japan Import, Inc. , 175 F.3d 266, 270 (CA2 1999) ("[E]veryone may use [generic terms] to refer to the goods they designate.").
B
Booking.com is a digital travel company that provides hotel reservations and other services under the brand "Booking.com," which is also the domain name of its website.[1] Booking.com filed applications to register four marks in connection with travel-related services, each with different visual features but all containing the term "Booking.com."[2]
Both a PTO examining attorney and the PTO's Trademark Trial and Appeal Board concluded that the term "Booking.com" is generic for the services at issue and is therefore unregistrable. "Booking," the Board observed, means making travel reservations, and ".com" signifies a commercial website. The Board then ruled that "customers would understand the term BOOKING.COM primarily to refer to an online reservation service for travel, tours, and lodgings." App. to Pet. for Cert. 164a, 176a. Alternatively, the Board held that even if "Booking.com" is descriptive, not generic, it is unregistrable because it lacks secondary meaning.
Booking.com sought review in the U. S. District Court for the Eastern District of Virginia, invoking a mode of review that allows Booking.com to introduce evidence not presented to the agency. See § 1071(b). Relying in significant part on Booking.com's new evidence of consumer perception, the District Court concluded that "Booking.com"-unlike "booking"-is not generic. The "consuming public," the court found, "primarily understands that BOOKING.COM does not refer to a genus, rather it is descriptive of services involving 'booking' available at that domain name." Booking.com B.V. v. Matal , 278 F.Supp.3d 891, 918 (2017). Having determined that "Booking.com" is descriptive, the District Court additionally found that the term has acquired secondary meaning as to hotel-reservation services. For those services, the District Court therefore concluded, *2304 Booking.com's marks meet the distinctiveness requirement for registration.
The PTO appealed only the District Court's determination that "Booking.com" is not generic. Finding no error in the District Court's assessment of how consumers perceive the term "Booking.com," the Court of Appeals for the Fourth Circuit affirmed the court of first instance's judgment. In so ruling, the appeals court rejected the PTO's contention that the combination of ".com" with a generic term like "booking" "is necessarily generic." 915 F. 3d 171, 184 (2019). Dissenting in relevant part, Judge Wynn concluded that the District Court mistakenly presumed that "generic.com" terms are usually descriptive, not generic.
We granted certiorari, 589 U. S. ----, 140 S.Ct. 489, 205 L.Ed.2d 290 (2019), and now affirm the Fourth Circuit's decision.
II
Although the parties here disagree about the circumstances in which terms like "Booking.com" rank as generic, several guiding principles are common ground. First, a "generic" term names a "class" of goods or services, rather than any particular feature or exemplification of the class. Brief for Petitioners 4; Brief for Respondent 6; see §§ 1127, 1064(3), 1065(4) (referring to "the generic name for the goods or services"); Park 'N Fly , 469 U.S. at 194, 105 S.Ct. 658 ("A generic term is one that refers to the genus of which the particular product is a species."). Second, for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation. Reply Brief 9; Brief for Respondent 2; see Estate of P. D. Beckwith, Inc. v. Commissioner of Patents , 252 U.S. 538, 545-546, 40 S.Ct. 414, 64 L.Ed. 705 (1920). Third, the relevant meaning of a term is its meaning to consumers. Brief for Petitioners 43-44; Brief for Respondent 2; see Bayer Co. v. United Drug Co. , 272 F. 505, 509 (SDNY 1921) (Hand, J.) ("What do the buyers understand by the word for whose use the parties are contending?"). Eligibility for registration, all agree, turns on the mark's capacity to "distinguis[h]" goods "in commerce." § 1052. Evidencing the Lanham Act's focus on consumer perception, the section governing cancellation of registration provides that "[t]he primary significance of the registered mark to the relevant public ... shall be the test for determining whether the registered mark has become the generic name of goods or services." § 1064(3).[3]
Under these principles, whether "Booking.com" is generic turns on whether that term, taken as a whole, signifies to consumers the class of online hotel-reservation services. Thus, if "Booking.com" were generic, we might expect consumers to understand Travelocity-another such *2305 service-to be a "Booking.com." We might similarly expect that a consumer, searching for a trusted source of online hotel-reservation services, could ask a frequent traveler to name her favorite "Booking.com" provider.
Consumers do not in fact perceive the term "Booking.com" that way, the courts below determined. The PTO no longer disputes that determination. See Pet. for Cert. I; Brief for Petitioners 17-18 (contending only that a consumer-perception inquiry was unnecessary, not that the lower courts' consumer-perception determination was wrong). That should resolve this case: Because "Booking.com" is not a generic name to consumers, it is not generic.
III
Opposing that conclusion, the PTO urges a nearly per se rule that would render "Booking.com" ineligible for registration regardless of specific evidence of consumer perception. In the PTO's view, which the dissent embraces, when a generic term is combined with a generic top-level domain like ".com," the resulting combination is generic. In other words, every "generic.com" term is generic according to the PTO, absent exceptional circumstances.[4]
The PTO's own past practice appears to reflect no such comprehensive rule. See, e.g. , Trademark Registration No. 3,601,346 ("ART.COM" on principal register for, inter alia , "[o]nline retail store services" offering "art prints, original art, [and] art reproductions"); Trademark Registration No. 2,580,467 ("DATING.COM" on supplemental register for "dating services"). Existing registrations inconsistent with the rule the PTO now advances would be at risk of cancellation if the PTO's current view were to prevail. See § 1064(3). We decline to adopt a rule essentially excluding registration of "generic.com" marks. As explained below, we discern no support for the PTO's current view in trademark law or policy.
A
The PTO urges that the exclusionary rule it advocates follows from a common-law principle, applied in Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co. , 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535 (1888), that a generic corporate designation added to a generic term does not confer trademark eligibility. In Goodyear , a decision predating the Lanham Act, this Court held that "Goodyear Rubber Company" was not "capable of exclusive appropriation." Id. , at 602, 9 S.Ct. 166. Standing alone, the term "Goodyear Rubber" could not serve as a trademark because it referred, in those days, to "well-known classes of goods produced by the process known as Goodyear's invention." Ibid. "[A]ddition of the word 'Company' " supplied no protectable meaning, the Court concluded, because adding "Company" "only indicates that parties have formed an association or partnership to deal in such goods." Ibid. Permitting exclusive rights in "Goodyear Rubber Company" (or "Wine Company, Cotton Company, or Grain Company"), the Court explained, would tread on the right of all persons "to deal in such articles, and to publish the fact to the world." Id. , at 602-603, 9 S.Ct. 166.
"Generic.com," the PTO maintains, is like "Generic Company" and is therefore ineligible for trademark protection, let alone federal registration. According to the PTO, adding ".com" to a generic term-like *2306 adding "Company"-"conveys no additional meaning that would distinguish [one provider's] services from those of other providers." Brief for Petitioners 44. The dissent endorses that proposition: "Generic.com" conveys that the generic good or service is offered online "and nothing more." Post , at 2309.
That premise is faulty. A "generic.com" term might also convey to consumers a source-identifying characteristic: an association with a particular website. As the PTO and the dissent elsewhere acknowledge, only one entity can occupy a particular Internet domain name at a time, so "[a] consumer who is familiar with that aspect of the domain-name system can infer that BOOKING.COM refers to some specific entity." Brief for Petitioners 40. See also Tr. of Oral Arg. 5 ("Because domain names are one of a kind, a significant portion of the public will always understand a generic '.com' term to refer to a specific business ...."); post , at 2312 - 2313 (the "exclusivity" of "generic.com" terms sets them apart from terms like "Wine, Inc." and "The Wine Company"). Thus, consumers could understand a given "generic.com" term to describe the corresponding website or to identify the website's proprietor. We therefore resist the PTO's position that "generic.com" terms are capable of signifying only an entire class of online goods or services and, hence, are categorically incapable of identifying a source.[5]
The PTO's reliance on Goodyear is flawed in another respect. The PTO understands Goodyear to hold that "Generic Company" terms "are ineligible for trademark protection as a matter of law "-regardless of how "consumers would understand" the term. Brief for Petitioners 38. But, as noted, whether a term is generic depends on its meaning to consumers. Supra , at 2304. That bedrock principle of the Lanham Act is incompatible with an unyielding legal rule that entirely disregards consumer perception. Instead, Goodyear reflects a more modest principle harmonious with Congress' subsequent enactment: A compound of generic elements is generic if the combination yields no additional meaning to consumers capable of distinguishing the goods or services.
The PTO also invokes the oft-repeated principle that "no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise ..., it cannot deprive competing manufacturers of the product of the right to call an article by its name." Abercrombie & Fitch Co. v. Hunting World, Inc. , 537 F.2d 4, 9 (CA2 1976). That principle presupposes that a generic term is at issue.
*2307 But the PTO's only legal basis for deeming "generic.com" terms generic is its mistaken reliance on Goodyear .
While we reject the rule proffered by the PTO that "generic.com" terms are generic names, we do not embrace a rule automatically classifying such terms as nongeneric. Whether any given "generic.com" term is generic, we hold, depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class.[6]
B
The PTO, echoed by the dissent, post , at 2314 - 2315, objects that protecting "generic.com" terms as trademarks would disserve trademark law's animating policies. We disagree.
The PTO's principal concern is that trademark protection for a term like "Booking.com" would hinder competitors. But the PTO does not assert that others seeking to offer online hotel-reservation services need to call their services "Booking.com." Rather, the PTO fears that trademark protection for "Booking.com" could exclude or inhibit competitors from using the term "booking" or adopting domain names like "ebooking.com" or "hotel-booking.com." Brief for Petitioners 27-28. The PTO's objection, therefore, is not to exclusive use of "Booking.com" as a mark, but to undue control over similar language, i.e. , "booking," that others should remain free to use.
That concern attends any descriptive mark. Responsive to it, trademark law hems in the scope of such marks short of denying trademark protection altogether. Notably, a competitor's use does not infringe a mark unless it is likely to confuse consumers. See §§ 1114(1), 1125(a)(1)(A) ; 4 McCarthy § 23:1.50 (collecting state law). In assessing the likelihood of confusion, courts consider the mark's distinctiveness: "The weaker a mark, the fewer are the junior uses that will trigger a likelihood of consumer confusion." 2 id. , § 11:76. When a mark incorporates generic or highly descriptive components, consumers are less likely to think that other uses of the common element emanate from the mark's owner. Ibid. Similarly, "[i]n a 'crowded' field of look-alike marks" (e.g. , hotel names including the word "grand"), consumers "may have learned to carefully pick out" one mark from another. Id. , § 11:85. And even where some consumer confusion exists, the doctrine known as classic fair use, see id. , § 11:45, protects from liability anyone who *2308 uses a descriptive term, "fairly and in good faith" and "otherwise than as a mark," merely to describe her own goods. 15 U.S.C. § 1115(b)(4) ; see KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc. , 543 U.S. 111, 122-123, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).
These doctrines guard against the anticompetitive effects the PTO identifies, ensuring that registration of "Booking.com" would not yield its holder a monopoly on the term "booking." Booking.com concedes that "Booking.com" would be a "weak" mark. Tr. of Oral Arg. 66. See also id. , at 42-43, 55. The mark is descriptive, Booking.com recognizes, making it "harder ... to show a likelihood of confusion." Id. , at 43. Furthermore, because its mark is one of many "similarly worded marks," Booking.com accepts that close variations are unlikely to infringe. Id. , at 66. And Booking.com acknowledges that federal registration of "Booking.com" would not prevent competitors from using the word "booking" to describe their own services. Id. , at 55.
The PTO also doubts that owners of "generic.com" brands need trademark protection in addition to existing competitive advantages. Booking.com, the PTO argues, has already seized a domain name that no other website can use and is easy for consumers to find. Consumers might enter "the word 'booking' in a search engine," the PTO observes, or "proceed directly to 'booking.com' in the expectation that [online hotel-booking] services will be offered at that address." Brief for Petitioners 32. Those competitive advantages, however, do not inevitably disqualify a mark from federal registration. All descriptive marks are intuitively linked to the product or service and thus might be easy for consumers to find using a search engine or telephone directory. The Lanham Act permits registration nonetheless. See § 1052(e), (f). And the PTO fails to explain how the exclusive connection between a domain name and its owner makes the domain name a generic term all should be free to use. That connection makes trademark protection more appropriate, not less. See supra , at 2305 - 2306.
Finally, even if "Booking.com" is generic, the PTO urges, unfair-competition law could prevent others from passing off their services as Booking.com's. Cf. Genesee Brewing Co. v. Stroh Brewing Co. , 124 F.3d 137, 149 (CA2 1997) ; Blinded Veterans Assn. v. Blinded Am. Veterans Foundation , 872 F.2d 1035, 1042-1048 (CADC 1989). But federal trademark registration would offer Booking.com greater protection. See, e.g. , Genesee Brewing , 124 F.3d at 151 (unfair-competition law would oblige competitor at most to "make more of an effort" to reduce confusion, not to cease marketing its product using the disputed term); Matal , 582 U. S., at ----, 137 S.Ct., at 1753 (federal registration confers valuable benefits); Brief for Respondent 26 (expressing intention to seek protections available to trademark owners under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ); Brief for Coalition of .Com Brand Owners as Amici Curiae 14-19 (trademark rights allow mark owners to stop domain-name abuse through private dispute resolution without resorting to litigation). We have no cause to deny Booking.com the same benefits Congress accorded other marks qualifying as nongeneric.
* * *
The PTO challenges the judgment below on a sole ground: It urges that, as a rule, combining a generic term with ".com" yields a generic composite. For the above-stated reasons, we decline a rule of that order, one that would largely disallow registration of "generic.com" terms and open the door to cancellation of scores of currently registered marks. Accordingly, the *2309 judgment of the Court of Appeals for the Fourth Circuit regarding eligibility for trademark registration is
Affirmed.

A domain name identifies an address on the Internet. The rightmost component of a domain name-".com" in "Booking.com"-is known as the top-level domain. Domain names are unique; that is, a given domain name is assigned to only one entity at a time.

For simplicity, this opinion uses the term "trademark" to encompass the marks whose registration Booking.com seeks. Although Booking.com uses the marks in connection with services, not goods, rendering the marks "service marks" rather than "trademarks" under 15 U.S.C. § 1127, that distinction is immaterial to the issue before us.

The U. S. Patent and Trademark Office (PTO) suggests that the primary-significance test might not govern outside the context of § 1064(3), which subjects to cancellation marks previously registered that have "become" generic. See Reply Brief 11; Tr. of Oral Arg. 19. To so confine the primary-significance test, however, would upset the understanding, shared by Courts of Appeals and the PTO's own manual for trademark examiners, that the same test governs whether a mark is registrable in the first place. See, e.g. , In re Cordua Restaurants, Inc. , 823 F.3d 594, 599 (CA Fed. 2016) ; Nartron Corp. v. STMicroelectronics, Inc. , 305 F.3d 397, 404 (CA6 2002) ; Genesee Brewing Co. v. Stroh Brewing Co. , 124 F.3d 137, 144 (CA2 1997) ; Trademark Manual of Examining Procedure § 1209.01(c)(i), p. 1200-267 (Oct. 2018), http://tmep.uspto.gov. We need not address today the scope of the primary-significance test's application, for our analysis does not depend on whether one meaning among several is "primary." Sufficient to resolve this case is the undisputed principle that consumer perception demarcates a term's meaning.

The PTO notes only one possible exception: Sometimes adding a generic term to a generic top-level domain results in wordplay (for example, "tennis.net"). That special case, the PTO acknowledges, is not presented here and does not affect our analysis. See Brief for Petitioners 25, n. 6; Tr. of Oral Arg. 25-26.

In passing, the PTO urges us to disregard that a domain name is assigned to only one entity at a time. That fact, the PTO suggests, stems from "a functional characteristic of the Internet and the domain-name system," and functional features cannot receive trademark protection. Brief for Petitioners 32. "[A] product feature is functional, and cannot serve as a trademark," we have held, "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." TrafFix Devices, Inc. v. Marketing Displays, Inc. , 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) (internal quotation marks omitted); see § 1052(e) (barring from the principal registrar "any matter that, as a whole, is functional"). This case, however, does not concern trademark protection for a feature of the Internet or the domain-name system; Booking.com lays no claim to the use of unique domain names generally. Nor does the PTO contend that the particular domain name "Booking.com" is essential to the use or purpose of online hotel-reservation services, affects these services' cost or quality, or is otherwise necessary for competitors to use. In any event, we have no occasion to decide the applicability of § 1052(e) 's functionality bar, for the sole ground on which the PTO refused registration, and the sole claim before us, is that "Booking.com" is generic.

Evidence informing that inquiry can include not only consumer surveys, but also dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning. Surveys can be helpful evidence of consumer perception but require care in their design and interpretation. See Brief for Trademark Scholars as Amici Curiae 18-20 (urging that survey respondents may conflate the fact that domain names are exclusive with a conclusion that a given "generic.com" term has achieved secondary meaning). Moreover, difficult questions may be presented when a term has multiple concurrent meanings to consumers or a meaning that has changed over time. See, e.g. , 2 J. McCarthy, Trademarks and Unfair Competition § 12:51 (5th ed. 2019) (discussing terms that are "a generic name to some, a trademark to others"); id. , § 12:49 ("Determining the distinction between generic and trademark usage of a word ... when there are no other sellers of [the good or service] is one of the most difficult areas of trademark law."). Such issues are not here entailed, for the PTO does not contest the lower courts' assessment of consumer perception in this case. See Pet. for Cert. I; Brief for Petitioners 17-18. For the same reason, while the dissent questions the evidence on which the lower courts relied, post , at 2312 - 2313, 2313 - 2314, we have no occasion to reweigh that evidence. Cf. post , at 2309 (SOTOMAYOR, J., concurring).