In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 24-3317, 25-1072, 25-1076 & 25-1112

ILLINOIS TAMALE COMPANY, INC., doing business as ILTACO,

*Plaintiff-Appellee/Cross-Appellant*,

*v.*

LC TRADEMARKS, INC. and LITTLE CAESAR ENTERPRISES, INC.,

*Defendants-Appellants/Cross-Appellees*.

———————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-05210 — **Jeremy C. Daniel**, *Judge*.

———————

ARGUED NOVEMBER 14, 2025 — DECIDED JANUARY 16, 2026

———————

Before SCUDDER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Illinois Tamale Company, Inc. ("Iltaco"), a Chicago-based food company, brought this trademark infringement action against LC Trademarks, Inc. and Little Caesar Enterprises, Inc. (collectively "Little Caesars"), based on Little Caesars' advertising for its "Crazy Puffs" food product. Iltaco claimed Little Caesars' Crazy Puffs product and advertising caused a substantial likelihood of confusion

with Iltaco's trademark-protected "Pizza Puff" product. Iltaco also moved for a preliminary injunction to enjoin Little Caesars from using "Crazy Puff," "Pizza Puff," and "Puff" in its product names and advertising. The district court denied the preliminary injunction as to "Crazy Puff" and "Puff," finding Iltaco failed to show sufficient likelihood of success in its trademark infringement action regarding those terms, but granted the preliminary injunction as to "Pizza Puff." Because the district court erred in concluding that Iltaco showed it was likely to succeed on the merits of its trademark infringement claim pertaining to "Pizza Puff," we reverse that portion of its decision. We affirm the district court's decision as to "Crazy Puff" and "Puff."

## I. Background

### A. Factual Background

Iltaco is a Chicago-based food company founded in 1927. In 1976, Iltaco began selling its pizza puff product, which is similar to a calzone but made from a flour tortilla wrapped around pizza toppings and can be fried or baked. Iltaco now sells its pizza puffs nationwide and has expanded its line of stuffed sandwich products to include a wide range of ingredients. Iltaco's list of registered trademarks includes the "Pizza Puff," "Gyro Puff," "Ham Breakfast Puff," "Sausage Breakfast Puff," and "Spinach & Cheese Puff." Specifically, it registered its "Pizza Puff" trademark on May 26, 2009. It also has a registered trademark for "Puff" as of May 3, 2022. Iltaco advertises its stuffed sandwich products under the "Pizza Puff" and "Puff" trademarks.

Little Caesars is a large chain of pizza restaurants founded in the United States with restaurant franchises worldwide. In

March 2024, Little Caesars launched its new Crazy Puffs product in its restaurants throughout the country. Crazy Puffs are small, baked pizza dough cups filled with pizza ingredients and topped with cheese. Crazy Puffs join Little Caesars' numerous other "Crazy" marks, which the pizza chain has used extensively in its marketing since the 1980s. Little Caesars owns numerous federal trademark registrations for its various "Crazy" products, and in May 2024 finalized its federal registration for the "Crazy Puffs" mark.[1] Before finalizing Little Caesars' registration, an examining attorney with the U.S. Patent and Trademark Office ("USPTO") searched the database of registered and pending marks and found no likelihood of confusion between "Crazy Puffs" and any prior registered or pending marks of third parties, including Iltaco.

Since launching Crazy Puffs, Little Caesars has marketed its puffs heavily using its "Little Caesars" trade name and the classic Little Caesars trade dress—the Roman Character logo, "Hot-N-Ready" tagline, "Crazy" mark, and bright orange coloring. Crazy Puffs marketing materials include a line reading "4 Hand-Held Pizza Puffs," which appears in small print directly below "Crazy Puffs." The phrase "Pizza Puffs" appears as part of "4 Hand-Held Pizza Puffs," which always appears in conjunction with the "Crazy Puffs" mark.

---

[1] Little Caesars disclaimed "Puffs" as part of its trademark in compliance with a USPTO examining attorney's advice, meaning Little Caesars claims no rights in that word.



Little Caesars Crazy Puffs Advertisement

Little Caesars sells Crazy Puffs exclusively through its restaurants, where customers can purchase them through traditional carryout or delivery channels. Little Caesars does not sell Crazy Puffs in grocery stores, convenience stores, or third-party restaurants.

### B. Procedural Background

The present dispute began in April 2024 when Iltaco sent Little Caesars a cease-and-desist letter claiming "Crazy Puffs" and "4 Hand-Held Pizza Puffs" infringed Iltaco's trademark rights in its "Pizza Puff" and "Puff" marks. Little Caesars disputed the merits of Iltaco's claims and continued to use both "Crazy Puffs" and "4 Hand-Held Pizza Puffs."

On June 21, 2024, Iltaco brought a four count complaint against Little Caesars, asserting claims under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for trademark infringement (Count I); Section 43(a) of the Lanham Act, § 1125, for false designation of origin (Count II); the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (Count III); and

common law unfair competition (Count IV). On the same day, Iltaco filed its motion for a preliminary injunction, seeking to enjoin Little Caesars from using "Crazy Puffs," "Pizza Puff," and "Puff" in selling its product. After holding an evidentiary hearing, the district court granted Iltaco's motion as to "Pizza Puff" and denied it as to "Crazy Puffs" and "Puff." Little Caesars now appeals the district court's decision enjoining its use of "Pizza Puff,"[2] and Iltaco cross-appeals the district court's denial of its injunction motion regarding "Crazy Puffs" and "Puff."

## II. Legal Standard

"We review the district court's denial of the motion for a preliminary injunction for an abuse of discretion, viewing its legal conclusions de novo, and findings of fact for clear error." *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 851 (7th Cir. 2025) (citing *Richwine v. Matuszak*, 148 F.4th 942, 952 (7th Cir. 2025)).

A district court may grant a preliminary injunction where the "movant shows that it is likely to succeed on the merits of

---

[2] Little Caesars also purports to appeal the district court's decision regarding its use of "Puff," arguing that the district court improperly found "Puff" is a protectable mark rather than a generic term. The district court did find "Puff" protectable, but also found no likelihood of confusion stemming from Little Caesars' use of "Puff" and accordingly denied the motion for preliminary injunction as to "Puff." Because the district court ultimately ruled in Little Caesars' favor as to "Puff," Little Caesars cannot appeal this favorable decision. *See Bd. Of Trs. Of Univ. of Ill. v. Organon Teknika Corp. LLC*, 614 F.3d 372, 374 (7th Cir. 2010); *United States v. Accra Pac, Inc.*, 173 F.3d 630, 632 (7th Cir. 1999) ("[A] litigant may not appeal from unfavorable statements in a judicial opinion, if the judgment was favorable.").

its claims and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without injunctive relief." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023) (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021)). Trademark law affords a rebuttable presumption of irreparable harm to movants who show they are likely to succeed on the merits of their trademark infringement claims. *Id.*; § 1116(a). If the movant shows it is likely to succeed on the merits, the court next "weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant." *Grubhub*, 80 F.4th at 844. The court also considers the public interest in granting versus denying the preliminary injunction request. *Life Spine*, 8 F.4th at 539.

"[A]n applicant for preliminary relief bears a significant burden," *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020), and must show more than "a mere possibility of success" on the merits to prevail, *Life Spine, Inc.*, 8 F.4th at 540. It is *not* enough, as Iltaco asserts, to show only a "better than negligible" chance of succeeding on the merits.[3] *Nken v. Holder*, 556 U.S. 418, 434 (2009). Of course, the movant "need not show that it definitely will win the case," but it "must

---

[3] It is difficult to determine which standard the district court applied. If the court applied the "better than negligible standard," it abused its discretion. *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1437 (7th Cir. 1986) ("A district judge may abuse his discretion . . . [by applying] an incorrect preliminary injunction standard."); *see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020) ("A court abuses its discretion when it fails to consider a motion under the proper legal standard."). Even if it applied the correct standard, however, the district court committed other legal errors that require reversal in part.

demonstrate at a minimum how it proposes to prove the key elements of its case." *Grubhub*, 80 F.4th at 844.

### III. Discussion

Trademark law serves the dual purposes of protecting customers' desires to make informed purchasing decisions based on familiar, trustworthy marks, and protecting trademark owners against misappropriation of marks in which they have invested significant time, energy, and resources. *See id.*

The Trademark Act of 1946, known as the Lanham Act, codified at 15 U.S.C. §§ 1051–1141n, governs our analysis. "The Lanham Act allows those who employ trade or service marks to register them for exclusive use in commerce." *Sport-Fuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019) (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004)). Under the Lanham Act, a "holder of a registered mark … has a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" *KP Permanent Make-Up*, 543 U.S. at 117 (quoting § 1114(1)(a)). To prevail on such a claim, the plaintiff must establish that "(1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001).

The Lanham Act also provides affirmative defenses to counter a plaintiff's claims, including the "fair use" defense. *See* § 1115(b). The fair use defense "allows individuals to use otherwise trademarked language in a descriptive sense." *SportFuel*, 932 F.3d at 595 (citing *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 639 (7th Cir. 2001)). To raise the fair use defense successfully, a defendant must show that (1) it did not use the

mark at issue as a trademark, (2) the use is descriptive of its goods, and (3) it used the mark fairly and in good faith. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015) (citing § 1115(b)(4)); *Packman*, 267 F.3d at 639.

### A. "Pizza Puff"

The district court found Iltaco was likely to succeed on the merits of its trademark infringement action for its "Pizza Puff" mark. In doing so, the court found Iltaco was likely to succeed in showing "Pizza Puff" was a protectable mark, that no fair use defense applied, and that there was substantial likelihood of confusion between both parties' use of "Pizza Puff." We address the district court's findings regarding protectability and fair use,[4] and ultimately reverse the preliminary injunction on Little Caesars' use of "Pizza Puff" because Iltaco failed to meet its burden of establishing a sufficient likelihood of success on the merits of its claim.

#### 1. Protectability Analysis

To succeed on a trademark infringement action, the mark or marks at issue must be protectable under the Lanham Act in the first place. Whether a mark is entitled to protection depends upon where it falls on a spectrum of increasing distinctiveness from (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp.*, 149 F.3d 722, 727 (7th Cir. 1998); *Packman*, 267 F.3d at 638. We review the district court's factual

---

[4] We are skeptical whether the district court made sufficient factual findings to support its likelihood of confusion analysis. In any event, we need not address likelihood of confusion because we are reversing on other grounds.

determination of where a mark falls along this spectrum for clear error. *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156–57 (7th Cir. 1996) ("[P]lacement of a mark in a particular category is subject to review for clear error, and thus may be set aside only if, after considering all the evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" (quoting *F. Corp. of N. Am. v. F., Ltd.*, 903 F.2d 434, 438 (7th Cir.1990))).

A trademark infringement action must fail if the mark is generic and will usually fail if the mark is descriptive. Generic terms, which are the terms "commonly used as the name of a kind of goods," *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986), may not be trademark protected "under any circumstances," *Miller Brewing Co. v. G. Heileman Co.*, 561 F.2d 75, 79 (7th Cir. 1977). Descriptive terms, which describe the ingredients, characteristics, or qualities of an article, are protected only if the holder can establish that the mark has acquired a secondary meaning. *U.S. Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 553 (2020). Secondary meaning attaches to marks that have "achieve[d] significance 'in the minds of the public' as identifying the applicant's goods or services." *Id.* (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000)). "Holiday Inn," for example, describes a vacation accommodation, but most people associate the term with one specific brand. *See also Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) ("5-Hour Energy . . . describes the caffeinated shot, but is readily associated by most customers with one maker." (internal quotations omitted)).

The Lanham Act provides a rebuttable presumption of va-lidity[5] for successfully registered trademarks, but the pre-sumption "evaporates as soon as evidence of invalidity is pre-sented." *Ga.-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011) (quoting *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996)). As rele-vant here, an *incontestable* registered mark—one that has been in continuous use for five years after registration—attains an even higher status of legal protection. The defendant may overcome this strong presumption of validity only by show-ing the incontestable trademark has become generic. § 1065; *Eco Mfg. LLC. v. Honeywell Int'l, Inc.*, 357 F.3d 649, 651 (7th Cir. 2003).

The district court found Iltaco's "Pizza Puff" mark was protectable because Little Caesars failed to overcome the pre-sumption of protection afforded to incontestable marks. Be-cause the court committed several errors in its analysis, and because Iltaco did not otherwise show it was likely to succeed in proving its mark is protectable, we reverse this portion of the court's decision.

### a. Primary Significance Test for Genericness

Whether a registered mark has become a generic term turns on the mark's "primary significance" to the relevant public. § 1064(3) ("The primary significance of the registered mark to the relevant public ... shall be the test for determining whether the registered mark has become the generic name of

---

[5] "The validity of a mark pertains to whether" a given term "is entitled to protection under trademark law." *Platinum Home*, 149 F.3d at 726. If a term that is the subject of a registered trademark is shown to be unprotect-able, the mark is invalid. *Id.*

goods or services."); *see also Booking.com*, 591 U.S. at 556 (applying "primary significance" test to determine whether mark was generic). The district court neglected to apply the primary significance test here. Instead, it found Iltaco was likely to succeed in showing its mark was protectable because other brands selling similar products are "able to compete effectively without using the plaintiff's 'PIZZA PUFFS' mark." The district court drew this standard from *Ty Inc. v. Softbelly's Inc.*, where we explained, in dicta, that finding a trademark has become generic is a "fateful step" that we do not ordinarily take "until the trademark has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." 353 F.3d 528, 531 (7th Cir. 2003). Because Iltaco provided examples of other brands producing similar products that competed effectively without using "Pizza Puff" (e.g., Hot Pockets, Totino's Pizza Rolls, Jimmy Dean Toaster Pop-Ups), the district court found the mark had not become the "exclusive descriptor" of the product and therefore was not generic under *Ty*.

Our language in *Ty* may explain one reason why generic marks are not protectable—i.e., because protecting generic marks would stymie competition from sellers of similar products unable to sufficiently describe their product. But it is not the correct test for genericness. The plain language of the Lanham Act, Supreme Court precedent, and even a previous paragraph in *Ty* explain that we assess the mark's primary significance to determine whether it has become generic and thus unprotectable under the Lanham Act. *See* § 1064(3); *Booking.com*, 591 U.S. at 556; *Ty*, 353 F.3d at 530–31 ("[T]he legal test of genericness is 'primary significance.'"). A term need not be the exclusive descriptor of a product to become generic.

Rather, a trademark plaintiff "may not prevent [the] defendant from using [a mark] simply because there are other titles defendant could use." *Tech. Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1141 (7th Cir 1984);[6] *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:9 (2006) ("Any product may have many generic designations. Any one of those is incapable of trademark significance."). A generic term is not made less generic by the availability of other terms. *Tech. Publ'g Co.*, 729 F.2d at 1141. If we held otherwise, we would "extend protection to a generic term, a result clearly at odds with trademark law." *Id.* Because the district court failed to apply the correct legal test—the primary significance test—to determine genericness, the district court erred.

### b. Primary Significance of "Pizza Puff"

Viewed under the correct standard, the issue is whether the primary significance of "Pizza Puff" to consumers is as a generic term describing a class of products or a distinctive term indicating association with a particular brand.

---

[6] Iltaco attempts to distinguish *Technical Publishing Co.* because it dealt with a magazine title, and "[m]agazines differ from other goods[] in that their title is a primary means of conveying their content," so "[c]ourts confronted with similar trade journal disputes have held consistently that titles consisting of the trade name and an indication of the type of publication are generic." 729 F.2d at 1140. But the distinction we drew between magazines and other goods related only to our classification of magazine titles as generic or descriptive terms; it did not extend to the test we apply to determine whether a mark has become generic. *Id.* Elsewhere in the opinion, we confirmed "[t]he test in determining whether a magazine title is generic is no different than that applied in determining whether any other mark is generic." *Id.*

*Booking.com*, 591 U.S. at 560–61. To determine the primary significance of a term, the court may consider "consumer surveys, … dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning." *Id.* at 561 n.6.

Little Caesars presented extensive evidence to show that the primary significance of Iltaco's incontestable[7] "Pizza Puff" mark to consumers is as a generic term. First, Little Caesars presented the results of a *Teflon* survey,[8] showing 83.3% of consumers of dough-based, pizza-ingredient-filled foods perceive "pizza puff" as a common (i.e., generic) term, while only 12.7% perceive the term as a brand name. The district court dismissed this strong evidence of genericness by finding it was "not conclusive" because in *Ty* we said, in dicta, that as few as ten percent of consumers associating a mark with an owner's brand could result in consumer confusion. 353 F.3d at 531. We cannot accept that ten percent of consumers is a relevant percentage for the genericness test, which focuses on the "primary significance" of a product to consumers. "[I]f a survey showed that 75 percent of the public regard the word as generic, then that is its majority usage and its 'principal significance.'" McCarthy § 12:6. Primary significance requires far

---

[7] Iltaco registered its "Pizza Puff" mark in 2009, well over five years ago, and has used it consistently since, so it has now become incontestable. The parties agree this mark is incontestable.

[8] *Teflon* surveys are the "most judicially accepted format for testing for genericness." McCarthy § 12:16. In a *Teflon* survey, the survey "begins with a brief lesson explaining the difference between brand names and common names. It then asks respondents to classify a series of words, including the trademark at issue, as either brand names or common names." *Elliott v. Google, Inc.*, 860 F.3d 1151, 1160 n.7 (9th Cir. 2017).

more than ten percent. The court thus erred when it found
Little Caesars' evidence inconclusive based on this inapplicable statement of the law. Viewed properly, survey data showing over 80 percent of relevant consumers perceive "pizza puff" as a generic term presents strong evidence of its genericness. *See* McCarthy § 12:6.

Little Caesars also presented several definitions of "pizza puff" drawn from crowd-sourced dictionaries to show the term has acquired a generic meaning. Definitions.net describes a pizza puff as "A dough pouch filled with the ingredients of a pizza, such as cheese, pizza sauce, sausage, and pepperoni, and usually deep fried." Kiddle Encyclopedia (an online encyclopedia for kids) describes a pizza puff as "A deep-fried dough pocket filled with cheese, tomato sauce, and other pizza ingredients such as sausage or pepperoni." Though the district court did not address these proffered pizza puff definitions, Iltaco argues on appeal that the crowd-sourced dictionary definitions are unreliable evidence because anyone can edit an online crowd-sourced dictionary. But Little Caesars introduced these definitions to show how the public uses and perceives the term "pizza puff." Our genericness analysis inquires into the primary significance of a term to the public, not its unequivocal technical definition.[9]

---

[9] A number of federal courts have found crowd-sourced definitions unreliable and even inadmissible as evidence of a term's technical definition or as the basis for an expert's testimony. *See, e.g.*, *Badasa v. Mukasey*, 540 F.3d 909, 909 (8th Cir. 2008) (noting Wikipedia definition of an Ethiopian travel document was unreliable evidence of party's immigration status); *Advanced Mech. Servs., Inc. v. Auto-Owners Ins. Co.*, No. 14-CV-388, 2017 WL 3381366, at *4 (W.D. Ky. Aug. 4, 2017) (finding expert witness's opinion inadmissible because expert relied on Wikipedia definition);

Crowd-sourced dictionary definitions inform that question, so they are relevant to our analysis and weigh in favor of genericness. Still, the fact that anyone can edit a crowd-sourced dictionary definition bears on the weight of Little Caesars' dictionary evidence.

The district court acknowledged, though did not analyze, evidence Little Caesars introduced of third parties using "pizza puff" in their USPTO applications and registrations to indicate the term has widespread generic use in the industry. We have found third-party registrations probative of a term's widespread descriptive use where over fifty third-party registrations used the same term to describe a similar quality. *See Spraying Sys. Co. v. Delevan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992) (finding the suffix "JET" descriptive of a hose product based in part on fifty other registrations using "JET" to describe similar high-velocity water stream products). Here, the five USPTO registrations cited by Little Caesars may not be dispositive on their own, but together with consumer survey

---

*Fleishman v. Cont'l Cas. Co.*, No. 09 C 414, 2011 WL 5866264, at *4 (N.D. Ill. Nov. 22, 2011) (finding inadmissible Wikipedia definition of "aneurysm" as evidence of plaintiff's injury). Similarly, the Fourth Circuit found a Sixth Amendment violation in a criminal trial where the jury independently obtained and considered a Wikipedia definition of an element of the crime at issue. *United States v. Lawson*, 677 F.3d 629, 641 (4th Cir. 2012). But where a crowdsourced definition is offered to show the significance of that term to members of the public, at least one federal court has relied upon the definition. *See Hawkins v. City of Phila.*, 571 F. Supp. 3d 455, 458 (E.D. Pa. 2021) (relying on crowd-sourced dictionary's definition of a slang term). Thus, while crowd-sourced dictionary definitions may unreliably evince a term's correct or technical definition, they more reliably represent what a term means to members of the public, which is what the genericness analysis is concerned about.

and dictionary evidence the USPTO registrations indicate other producers of similar products primarily think of "pizza puff" as a name for a class of foods rather than a particular brand within that class.

Iltaco's arguments to the contrary—that the USPTO descriptions are unreliable evidence and that they do not apply because some of the marks using "pizza puff" as a descriptor are inactive—do not counter this evidence. Iltaco relies on a district court decision stating that USPTO registrations are not sufficiently reliable for the court to take judicial notice of them, not that they are unreliable evidence altogether. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 772 (N.D. Ill. 2011). And USPTO registrations using "pizza puff" are probative of how other companies in the food industry use that term even if they are inactive. *Spraying Sys.*, 975 F.2d at 393 ("[T]hose [registered trademarks] that are not [in current use] can still be probative on the issue of descriptiveness.").

Not all of Little Caesars' evidence of genericness is as compelling. Online recipes for pizza puffs have low evidentiary value because the internet is replete with copycat recipes teaching home cooks how to replicate popular, often trademarked, dishes at home (e.g., recipes for homemade Hot-Pockets, Pop-Tarts, etc.).[10] Little Caesars also introduced evidence of menus listing "pizza puff" alongside generic food

---

[10] *See Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2018 WL 1534971 at *5 (N.D. Ill. Mar. 29, 2018) ("There are also thousands of recipes for a homemade version of Hot Pockets, another specific brand of stuffed sandwich. The existence of such recipes does not necessarily suggest that 'Hot Pockets' is a generic term [but rather] that Hot Pockets are a well-known brand that home cooks want to replicate." (citation modified)).

items, indicating the term is used widely in the industry as a generic term. *See Miller Brewing,* 561 F.2d at 80 (finding "light" generic in part because it is "widely used in the beer industry"). These menus provide some support for genericness, but unlike the evidence in *Miller Brewing* showing others in the beer industry used "light" to describe their own distinct products, it is unclear whether the menus Little Caesars cited refer to the restaurants' own products or to Iltaco's, given Iltaco sells its food products to third-party restaurants. Little Caesars nevertheless contends the menus support genericness because placing "pizza puff" alongside generic terms like "fries" and "hot dog" must mean "pizza puff" is generic. But again, because Little Caesars did not show[11] the menus referenced anything but Iltaco's product, they do not necessarily show others in the industry do not associate "pizza puff" with Iltaco.

Even so, the district court ultimately erred by finding Iltaco was likely to succeed in showing "Pizza Puff" is protectable because the court failed to apply the primary significance test and the record did not support its final decision. Little Caesars' consumer survey data, dictionary definitions, and USPTO registrations showing generic usage were sufficient to overcome the presumption of trademark validity, and Iltaco did not show how it could overcome this evidence at trial to prove "Pizza Puff" is a protectable mark. Iltaco thus failed to carry its burden of showing a likelihood of success on the

---

[11] Little Caesars must make an affirmative showing because it bears the burden of overcoming the presumption of protectability inherent to incontestable marks. *See Liquid Controls,* 802 F.2d at 936 ("The burden is on the defendant to overcome the presumption.").

merits, so the district court should not have granted its motion for preliminary injunction.

**2. Fair Use Analysis**

Even if "Pizza Puff" is sufficiently distinctive to merit protection under the Lanham Act, Iltaco cannot prevail without showing how it will successfully counter Little Caesars' fair use defense. A defendant in a trademark infringement case may invoke the "fair use" defense by demonstrating that (1) it used the phrase at issue in a non-trademark capacity, (2) the phrase is descriptive of its goods and services, and (3) it used the phrase "fairly and in good faith" only to describe its goods. § 1115(b)(4); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992); *Packman*, 267 F.3d at 639.

Little Caesars asserted a fair use defense in response to Iltaco's preliminary injunction motion, but the district court rejected the defense based on the second prong,[12] explaining:

> The defendants have not shown that "PIZZA PUFFS" is descriptive of their goods. The defendants['] product looks like a mini-pizza or a pizza muffin or a pizza cupcake or a pizza bite. It is not apparent what part of the defendants' product is a puff, which means that the mark is not descriptive of the defendants' goods.

The district court erred in reaching this conclusion because it misapplied the relevant legal standard to determine whether "Pizza Puff" is descriptive of Little Caesars' product. The district court mistakenly required Little Caesars' product

---

[12] Because the district court did not address the first or third prongs of fair use, we do not address them here.

to *be* a pizza puff for the term to apply descriptively. In fact, the term need only refer to a *characteristic* of the product. *F. Corp.*, 903 F.2d at 444. We identified a similar problem in *Quaker Oats*, where the district court erred by requiring a descriptive term to "bring to mind the product in question." 978 F.2d at 952. We explained "it is not necessary that a descriptive term depict the [product] itself, but only that the term refer to a *characteristic* of the [product]." *Id.* (quoting *F. Corp.*, 903 F.2d at 444). The district court should have considered whether "Pizza Puff" fairly described a characteristic or quality of Little Caesars' Crazy Puffs product, not whether Crazy Puffs *are* pizza puffs.

Under the correct test, the district court's determination that "Pizza Puff" is not descriptive falls short. A Little Caesars representative testified that "Crazy Puffs" are "light and airy muffins" that are "puffy." No one disputes that Crazy Puffs are filled with pizza ingredients like cheese, tomato sauce, meat, and vegetables. This evidence fairly shows that "Pizza Puff" describes a Crazy Puff, which is a puffy and airy muffin containing pizza ingredients. And "Pizza Puff" appears as part of the phrase "4 Hand-Held Pizza Puffs," which is clearly describing the quantity, size, and type of food customers can expect when they purchase a Crazy Puff. The district court did not consider this evidence or explain how Iltaco could counter it at trial. Because the district court applied the wrong standard, the district court abused its discretion in granting the preliminary injunction for "Pizza Puff." *See Lawson Prods.*, 782 F.2d at 1437 ("[A] factual or legal error may alone be sufficient to establish that the court 'abused its discretion' in making its final determination.").

**B. "Crazy Puffs" and "Puff"**

The district court found Iltaco failed to meet its burden with respect to Little Caesars' use of its "Crazy Puffs" mark because Iltaco did not show there was a likelihood of confusion between Little Caesars' "Crazy Puffs" mark and Iltaco's "Pizza Puff" or "Puff" marks. The court did not clearly err in either determination, so we affirm its decision regarding both marks.

The district court correctly rejected Iltaco's suggestion that "Crazy Puffs" and "Pizza Puff" were confusingly similar because both contain the word "Puff." When evaluating the likelihood of confusion between marks, "we must keep in mind that '[t]he commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail.'" *Grubhub*, 80 F.4th at 848 (quoting *Est. of P.D. Beckwith, Inc. v. Comm'r of Pats.*, 252 U.S. 538, 545–46 (1920)). Thus, we cannot look at "Puff" (from "Crazy Puffs") in isolation and find it confusingly similar to "Puff" in Iltaco's "Pizza Puff" name. We must consider the "Crazy Puffs" mark in its entirety, as the district court rightly explained.

Viewing the "Crazy Puffs" mark as a whole, the district court did not err in finding no likelihood of confusion with "Pizza Puff." The court found the two terms are significantly different because Iltaco's mark denotes the ingredients found in the product while Little Caesars' mark uses "Crazy" to tie its product to its own family of Crazy marks. Iltaco's mark describes what a consumer can expect to find inside the puff, while Little Caesars' mark designates its brand. Though the court found other likelihood-of-confusion factors may favor Iltaco, it held "the difference in the marks' overall impression

precludes finding a likelihood of success by the plaintiff on likelihood of confusion."

A district court has broad "flexibility to determine what [likelihood-of-confusion] factors are most critical in a case." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 901 (7th Cir. 2001). And because the similarity of the marks is one of the most important considerations, a district court does not abuse its discretion by finding no likelihood of confusion based on dissimilar marks even when other factors weigh in favor of confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000). Here, the district court made a reasoned determination that the two marks were not similar and did not abuse its discretion in weighing the similarity factor heavily to find no likelihood of success in showing likelihood of confusion.

\*      \*      \*

Because Iltaco did not show it is likely to succeed in proving that "Pizza Puff" is protectable or rebutting Little Caesars' fair use defense at trial, Iltaco has not established a likelihood of success on the merits. Accordingly, we do not proceed to the harms-balancing or public interest steps of the preliminary injunction analysis. *See Grubhub*, 80 F.4th at 844 ("[Only] [u]pon a showing of [likelihood of success on the merits], the court weighs the harm of denying an injunction.").

The district court abused its discretion by granting the preliminary injunction as to "Pizza Puff," but did not abuse its discretion in denying the injunction regarding "Crazy Puffs" or "Puff."

The judgment of the district court is

AFFIRMED IN PART AND REVERSED IN PART.